UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VIKING YACHT COMPANY, a New Jersey Corporation; and POST MARINE CO., INC., a New Jersey Corporation,

    Plaintiffs,

  v.

COMPOSITES ONE LLC, a Foreign Limited Liability Company; CURRAN COMPOSITES, INC., a Missouri Corporation; C TWO LLC, a Foreign Limited Liability Company; and TOTAL COMPOSITES, INC., a Delaware Corporation joint d/b/a/ COOK COMPOSITES AND POLYMERS, a fictitiously named Delaware Partnership,

    Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 05-538(JEI)

**OPINION**

**APPEARANCES:**

BRIAN E. RUMPF, Esq.
960 Radio Road
Little Egg Harbor, NJ 08087

HENRY J. TYLER, Esq.
Society Hill Office Park
1874 Route 70 East
Suite #4
Cherry Hill, NJ 08003
    Counsel for Plaintiffs

BUCHANAN INGERSOLL PC
By: Meredith Myers LeConey, Esq.
1835 Market Street
14th Floor
Philadelphia, PA 19103

By: Paul Kevin Brobson, Esq.
213 Market Street
3rd Floor

1

Harrisburg, PA 17101
    Counsel for Defendants

**IRENAS**, Senior District Judge:

Presently before the Court is Plaintiff Post Marine Co., Inc.'s ("Post") Motion for Reconsideration, and Defendant Cook Composites and Polymers Co.'s ("CCP") Cross-Motion for Clarification and Reconsideration of this Court's Opinion and Order dated July 26, 2007 (the "Opinion" and "Order"). For the reasons that follow, the Motions will be partially granted and partially denied.

**I.**

Upon a motion for reconsideration, a court may alter or amend its decision if "the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *see also* L. Civ. R. 7.1(I).

**II.**

Post seeks reconsideration of the Court's grant of summary judgment on its fraudulent misrepresentation claim in Count VII based upon the Court's ruling that Post stopped using the 953 Series gel coat in 2002. Post contends that while it only used

the 953 Series in manufacturing its boats through August, 2002, it continued to use it to repair cracked boats through 2005, in purported reliance on CCP's continued representations about the quality of the 953 Series gel coat.

The Court's factual finding as to the date Post ceased using the 953 Series gel coat is, however, is premised upon Post's express contention that "*Post stopped using CCP gel coat in 2002.*" (Post's S.J. Br., p.8, Docket # 108)(emphasis added). Based upon this statement, the Court concluded in its Opinion that "Post stopped using CCP gel coat in 2002." (Opinion p.3).

Upon a further review of the record and Post's reconsideration motion, the Court still finds that Post stopped using the 953 Series gel coat in the manufacture of its boats during 2002. The precise date on which Post discontinued use of the 953 Series in manufacture, however, is unclear from the record.[1] In its Opinion, the Court found that CCP published new test results for the elongation of the 953 Series in January of 2002. (Opinion p.20). Thus, to the extent that Post manufactured boats using the 953 Series after CCP published the

---

[1] Although Post contends that the date Post ceased using the 953 Series in manufacture is August, 2002, it does not cite to any place in the voluminous record where this date can be found. Similarly, neither the Court nor CCP have located any such date. According to the deposition of Post's President Kenneth Jensen, Post switched from using the 953 Series gel coat to the gel coat of another company in manufacturing its boats in late 2002. (LeConey Cert. Ex. 8, 121:17-19; 123:3-124:4).

new elongation information in January of 2002, the motion for reconsideration will be granted, and CCP's motion for summary judgment will be denied.

As to Post's use of the 953 Series for repairing its boats through 2005, both in its briefing for the motions for summary judgment and the motions for reconsideration, Post offers contradictory statements, makes numerous factual assertions without citation to the record, and mis-cites the voluminous record.[2] In support of its motion for reconsideration, Post relies upon: (1) Kenneth Jensen's deposition; (2) its brief in support of its motion for summary judgment; and (3) its supplemental answers to interrogatories. In its reconsideration brief, Post quotes from Jensen's deposition and cites to it in three places, each time indicating that it is located in Exhibit 1 to Michael Weisz's Second Supplemental Certification. Exhibit 1, however, is the deposition of Joseph Martorana, which has no bearing on the instant motion.[3]

Post next relies upon a statement contained on page 59 of its 60-page summary judgment brief as proof that it used the 953

---

[2] As noted by CCP in its memorandum in opposition to Plaintiff's summary judgment motion, "[t]he instances where Plaintiffs fail to offer evidence of record are so numerous that limited space does not permit a full retort." (Docket # 93, p.3).

[3] Jensen's deposition, cited for the first time in Post's reconsideration briefing, indicates that Post continued to purchase from CCP in 2003, 2004, and 2005, for the purpose of repairing cracked boats. (LeConey Cert. Ex. 8, 324-35).

4

Series through 2005, despite the fact that it stated on page 8 of the same brief that it stopped using CCP's gel coat in 2002. On the concluding pages of its summary judgment brief, Post states,

> [I]n January of 2002, CCP published new values for the 953 gel coat . . . . This information was never provided to Post or Viking. In 2003, when Post asked CCP for help in determining the cause and solution of the cracking problem, none of this information was disclosed to them . . . . *The problem is that Post had been using the 953 gel coat to fix boats with gel coat cracking since 2003* . . . . In Viking's case, it continued using the gel coat in production through the middle of 2004.

(Post's S.J. Br., p.58-59, Docket # 108)(emphasis added).

Finally, although Post failed to cite to this exhibit in its summary judgment briefing, Post now relies upon its fourth supplemental answers to interrogatories, Weisz Certification Exhibit 4, which Post describes as "setting forth that boats had been repaired with 953 Series gel coat up through 2005, and that boats that had been previously repaired with 953 Series gel coat have cracked again." (Post Recon. Br., p. 4). Post does not cite to any specific portion of the document, but apparently relies upon the entire exhibit.

The exhibit contains multiple charts, many of which contain information that is inapposite to Post's Reconsideration motion. Relevant are interrogatories 20 and 23. Number 20 asks for customer complaints that Post received regarding the 953 Series gel coat and actions taken in response to such complaints. In response, Post's chart indicates that complaints were made into

5

2006, and that repairs were made after 2002. It does not state, however, the nature of such repairs, or whether any such repairs were made using the 953 Series gel coat.

In interrogatory 23, Post is asked to "describe with particularity all repairs made to boats by Post in connection with damage allegedly related to the 953 Series Gel Coat." Post lists 13 boats, 11 of which it purportedly repaired using the 953 Series. Included in this response are the hull numbers of the damaged boats, and the type of gel coat that Post used in re-application. When comparing this response to the first response, the Court notes that, together, they tend to support Post's contention on Reconsideration that it used the 953 Series in its repairs from 2003 through 2005.[4]

Assuming this is true, however, Post must still establish the following elements to support a claim of fraudulent misrepresentation: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Konover Constr. Corp. v. E. Coast Constr. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006)(Irenas, J.)(quoting *Gennari v. Weichert Co. Realtors*, 148

---

[4] The Court notes, however, that some entries in the response to interrogatory 20 indicate that repairs were made, but fail to provide a date.

6

N.J. 582, 610, 691 A.2d 350 (1997)).

Post cannot establish prong four - reasonable reliance on any misrepresentation by CCP about the 953 Series gel coat. After Post experienced massive cracking in 2002, it stopped using the 953 Series in manufacturing its boats, and instead switched to another product. (LeConey Cert. Ex. 8, 121:17-19; 123:3-124:4). Post's President, Jensen, testified that the reason Post continued to repair its boats with the 953 Series after it was dissatisfied with the gel coat's performance in production was "because it was a lot easier - at that time the repairs were being done, we needed to color match so we had to stay with the [953 Series] gel coat." (LeConey Cert. Ex. 8, 235:11-15).

Moreover, Post alleges that it continued to use the 953 Series through 2005, which is after it filed a Complaint on November 4, 2004, alleging, *inter alia,* that the 953 Series is defective. (1st Amend. Compl. ¶ 60). As the Court quoted in its Opinion, "[a]lthough the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity if he had shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses[.]" *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 179 F.R.D. 450, 476 (D.N.J. 1998).

Post clearly believed that the 953 Series was subject to extensive cracking, as it stopped using it in manufacture in late

2002, after it experienced massive cracking, and filed a law suit as a result of such cracking. Thus, its purported reliance on CCP's representations about the 953 Series' flexibility after it stopped using the product for manufacture in 2002 was not reasonable. Accordingly, Post's motion for reconsideration will be denied as to its continued use of the 953 Series to repair boats after it ceased using the gel coat in manufacturing.

## III.

In its motion for clarification/reconsideration, CCP contends that the Court erred in preserving for trial Plaintiff's NJCFA claim contained in Count XI of the Complaint. The factual basis underlying Count XI is that:

> CCP misrepresented how the 953 gel coat would perform by 1) presenting unreliable data as reliable; and 2) by falsely inducing reliance on its expertise, when it now claims it did not intend Plaintiffs to so rely. In addition, CCP unconscionably misrepresented that it expected its customers, including Plaintiffs, not only to test the gel coat for their anticipated application, but also for its durability - tests CCP itself does not perform.

(Pls' Opp. Br., 41). Indeed, the Court noted in its Opinion that the affirmative act alleged was that CCP initially presented unreliable test data about the 953 Series' flexibility. The Court ruled, however, that because the record does not conclusively show whether the original data was reliable, the claim for misrepresentation under the NJCFA would survive summary

8

judgment.[5]

Plaintiffs then brought claims for breach of warranty under the NJCFA in Count XII, which is premised upon the separate contention that CCP: (1) offered a "sham" warranty that the gel coat would "meet the seller's specifications at the time of delivery," and (2) disclaimed all other warranties in favor of this illusory warranty. While this Court concluded that CCP's disclaimer was ineffective inasmuch as it was inconsistent with the terms of product bulletin, the Court held that no "substantial aggravating circumstances" accompanied any breach of warranty in order for Plaintiffs to recover under the Act.

The requirement that substantial aggravating circumstances be shown to convert a simple breach of warranty claim into one under the NJCFA, and the finding that no such factors exist, was limited to the breach of warranty claim under the NJCFA contained in Count XII.[6] This requirement and finding does not extend to

---

[5] These claims do not rely on the language in CCP's product bulletin, which the Court ruled constitutes an express warranty, or on CCP's warranty located in its disclaimer that the gel coat would meet its specifications at the time of shipment.

[6] As stated in the Opinion, a breach of warranty alone does not violate the NJCFA. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 587 (3d Cir. 1997). The NJCFA does not include breach of warranty in the list of actions that constitute violations of the Act. *See* N.J. Stat. § 56:8-2 ("[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice[.])" Thus, courts have held that substantial aggravating circumstances

9

the claims of misrepresentation and unconscionable commercial practice in Count XI, because the claims in Count XI were not premised upon the alleged breach of warranty. Rather, Plaintiffs' claims in Count XI allege violations of the NJCFA due to the purported unconscionable commercial practice of inducing reliance on unreliable data, which, if proven, could constitute violation of the NJCFA without an additional showing of substantial aggravating factors.

Because the Court's Opinion granting CCP's summary judgment motion on Count XII, and denying it on Count XI is supported by the facts and the law, CCP's reconsideration motion on this issue will be denied.[7]

**IV.**

Finally, CCP seeks enforcement of the limitation of remedies and exclusion of damages quoted on pages 10-11 of the Opinion, which purportedly limits Plaintiffs' remedies to replacement of the gel coat or refund of the purchase price and excludes other remedies, including incidental and consequential damages.

---

must be present to convert a breach of warranty claim into one that is actionable under the NJCFA. *See, e.g., Suber*, 104 F.3d at 587; *see also D'Ercole Sales v. Fruehauf Corp.*, 206 N.J. Super. 11, 31 (App. Div. 1985). There is no such requirement, however, to prove violations of the actions listed in the Act. *See* N.J. Stat. § 56:8-2.

[7] CCP has also moved to file a reply memorandum. Included as an attachment to its motion papers was the memorandum, which the Court has considered in deciding this motion. Thus, the Court will grant CCP's motion.

10

Because it is unclear at this juncture whether Plaintiffs are entitled to any remedy, the Opinion did not consider whether any potential recovery Plaintiffs may be awarded in the event that this litigation proceeds to trial would be limited by the language in CCP's disclaimer.  Through its motion for clarification/reconsideration, CCP urges the Court to consider this issue and to limit Plaintiffs' recovery for any damages awarded based upon breach of express warranty to the contractual remedies of replacement or refund.  The Court will now consider this issue due to the potential monies that the parties may be required to expend if it is not decided before trial.

The limitation of remedy is found in CCP's "Disclaimer and Limitation of Liability" ("the Disclaimer"), and reads in relevant part:

> The Buyer's sole and exclusive remedy against Seller shall be for the replacement of the product or refund of the purchase price in the event that a defective condition of the product should be found to exist by Seller.  NO OTHER REMEDY (INCLUDING, BUT NOT LIMITED TO, INCIDENTAL OR CONSEQUENTIAL DAMAGES FOR LOST PROFITS, LOST SALES, INJURY TO PERSON OR PROPERTY, OR ANY OTHER INCIDENTAL OR CONSEQUENTIAL LOSS) SHALL BE AVAILABLE TO THE BUYER.
>
> The sole purpose of the exclusive remedy shall be to provide Buyer with replacement of the product or refund of the purchase price of the product if any defect in material or workmanship is found to exist.  This exclusive remedy shall not be deemed to have failed its essential purpose so long as Seller is willing and able to replace the defective products or refund the purchase price.

The Uniform Commercial Code allows for parties to limit

potential remedies, provided that the remedy is exclusive and does not fail of its essential purpose. *See* N.J. Stat. § 12A:2-719 ("§ 2-719");[8] *Garden State Food Distributors, Inc. v. Sperry Rand Corp., Sperry Univac Div.*, 512 F. Supp. 975, 977 (D.N.J. 1981). Comment 1 to § 2-719 states that "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provision of the Article." *BOC Group, Inc. v. Chevron Chemical Co., LLC*, 359 N.J. Super. 135, 147 (App. Div. 2003), interpreting this provision, explained:

---

[8] § 2-719 provides for contractual limitation of remedies, as follows:
(1) Subject to the provisions of subsections (2) and (3) of this section and of the preceding section on liquidation and limitation of damages,
    (a) the agreement may provide for remedies in addition to or in substitution for those provided in this Chapter and may limit or alter the measure of damages recoverable under this Chapter, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
    (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.
(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

> The exclusive remedy provision is not concerned with arrangements which were oppressive at their inception, but rather with the application of an agreement to novel circumstances not contemplated by the parties . . . Although an arm's length contract between sophisticated commercial parties, such as in this case, should not be readily upset by a court, where a party is deprived of the substantial value of its bargain by reason of the exclusive remedy, the contract remedy will give way to the general remedy provisions of the U.C.C.

*Id.* (internal citations and quotations omitted).

Plaintiffs do not dispute that they received the Disclaimer, but argue that the Court should not enforce the limitation because CCP refused to provide any remedy for the cracked boats, stating that the problems were not covered by its warranty, and a refund of the purchase price of the gel coat deprives Plaintiffs of the benefit of their bargain.[9] Thus, Plaintiffs argue that the remedy fails of its essential purpose.

In interpreting the Disclaimer, the Court must read the limitation of remedies in the context of the section in which it is contained. *See Kennedy v. Westinghouse Elec. Corp.*, 16 N.J. 280, 288 (1954).

> The design of the parties to a written contract is to be collected from the instrument as an entirety. And the writing is to have a reasonable construction. Disproportionate emphasis upon a single provision does not serve the purpose of interpretation. Words, phrases and clauses are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intention. The literal sense of the terms may be

---

[9] Again, Plaintiffs provide no citation to the voluminous record in support of this statement.

13

> qualified by the context. The significance of a
> particular part of the writing is determined by a
> consideration of all its parts.

*Id.* (citation omitted). Moreover, "[i]t is well established that 'an interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.'" *Newstart Factors, Inc. v. Casio, Inc.*, 2005 U.S. Dist. LEXIS 36394 (D.N.J. 2005)(citing *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985)).

The Disclaimer begins with an express warranty that "[t]he products sold hereunder shall meet Seller's applicable specifications at the time of shipment. Seller's specifications may be subject to change at any time without notice to buyer." It then provides that buyer must notify seller of any defect covered by the warranty within 30 days. Next, it disclaims all other warranties, and provides that the exclusive remedy in the event of a defect is replacement or refund. It states "[t]he sole purpose of this exclusive remedy shall be to provide Buyer with replacement of the product or refund of the purchase price of the product *if any defect in material or workmanship is found to exist*." (emphasis added). Thus, when the Disclaimer is read in its entirety, the remedies are offered in the event that a product is found to be defective, i.e., when a product does not meet Seller's specifications.

14

It is uncontested that the gel coat met CCP's specifications. (See Opinion pp. 12, 21 fn 18). Accordingly, the limitation of remedy CCP intended to provide in the event of defect, including the exclusion of consequential and incidental damages, does not apply here, where the gel coat met CCP's specifications, and was not "defective" within the meaning of the disclaimer.

In the alternative, even if the Court found that the provision applied, the limited remedies deprive Plaintiffs of the substantial benefit of their bargains. Although the Court recognizes that a remedy need not put a party in precisely the same position as the party would have been had the breach not occurred, a party is nonetheless entitled to the substantial value of his bargain. *See* § 2-719. The Court will not uphold CCP's limited contractual remedies due to the combination of two factors: (1) the 953 Series' alleged malfunction was latent; and (2) the gel coat was combined into a larger product before use.

"Limited remedies under the UCC have been held to fail of their essential purpose when defects in the goods are latent and not discoverable on reasonable inspection." *Garden State Food Distributors, Inc. v. Sperry Rand Corp., Sperry Univac Div.,* 512 F. Supp. 975, 978 (D.N.J. 1981)(holding, in part, that because the defect was not latent, the remedy was neither inadequate nor did it fail of its essential purpose)(quoting *Marr Enterprises,*

*Inc. v. Lewis Refrigeration Co.*, 556 F.2d 951, 955 (9th Cir. 1977)). Assuming the gel coat malfunctioned, the malfunction was latent. Plaintiffs did not detect any defect in the 953 Series when they incorporated it into the boats they manufactured, and the propensity of the gel coat to crack when used in cold-weather climates could not have been discovered until the boats were manufactured and used in such climates. Moreover, it would be unfair to expect Plaintiffs to be experts in each of the numerous parts they use in manufacturing boats such that they could anticipate such malfunctions.

Second, because Plaintiffs build boats by combining many different materials, including gel coat, Plaintiffs cannot now simply re-purchase gel coat from a different company and use it. Rather, the 953 Series gel coat must first be removed, and then the new gel coat applied.[10] Plaintiffs contend that while the cost of liquid gel coat is $3,000.00 per boat, the cost of replacing the hardened, cracked gel coat on a boat averages

---

[10] This is in contrast to cases in which parties purchase defective items, and can be made whole with a refund remedy which allows them to purchase the items from a different vendor. *See, e.g., Garden State Food Distributors, Inc.*, 512 F. Supp. 975 (lessee of a defective computer system, which included hardware, software, and services); *Ritchie Enterprises v. Honeywell Bull, Inc.*, 730 F. Supp. 1041 (D. Kan. 1990)(back-up refund remedy offered to purchaser of computers who rejected the computers after six months of unsuccessful testing and replaced them with computers from a different company); *Arcata Graphics Co. v. Heidelberg Harris*, 874 S.W.2d 15, 29 (Tenn. Ct. App. 1993)(purchaser of printing press who experienced problems upon installation of the machine).

16

$279,000.00 per boat for Post and $822,407.59 for Viking. Additionally, Plaintiffs claim that gel coat that is not replaced can damage the boats' hulls, in which case refund of the purchase price of the 953 Series would be even more inadequate.

CCP argues that as sophisticated merchants, it was appropriate for CCP to limit its liability, and that Plaintiffs could have negotiated a better bargain, but chose not to in favor of paying a lower purchase price. The Court, however, has found that CCP additionally warranted "improved flexibility and weathering characteristics" in its product bulletin. Thus, CCP's argument that Plaintiffs could have negotiated a better bargain but chose not to is undercut by the Court's ruling that CCP offered more than the warranty contained in its Disclaimer. Under these circumstances, the limitation of remedies deprives Plaintiffs of the substantial value of their bargain.

This leaves the question of the validity of the exclusion of consequential and incidental damages clause. As noted in *Chatlos Sys., Inc. v. Nat'l Cash Register Corp. (NCR Corp.)*, 635 F.2d 1081, 1086 (3d Cir. 1980), "[s]everal cases have held that when a limited remedy fails of its purpose, an exclusion of consequential damages also falls, but approximately the same number of decisions have treated that preclusion as a separate matter." In *Chatlos,* the Third Circuit adopted the latter approach. *Chatlos* involved an exclusive repair remedy, which the

Court held was unenforceable due to the untimeliness of the repair of the faulty installation of a computer system. *Id.* at 1086. The Court held that the exclusion of consequential damages should be reviewed independently, and should stand if not unconscionable. *Id.; see also* N.J. Stat. § 12A:2-719(3). However, it also stated that unconscionability is to be decided under the circumstances, and it is relevant to consider the failure of the essential purpose of a contractual remedy when making this determination. *Id.*

As noted by the Third Circuit, analyzing Wisconsin law, "under [UCC § 2-719], the parties 'must accept the legal consequences that there be at least a fair quantum of remedy for breach of the obligations or duties outlined in the contract.'" *Ragen Corp. v. Kearney & Trecker Corp.*, 912 F.2d 619, 625 (3d Cir. 1990)(holding that a court's refusal to enforce a consequential damages exclusion because the contractual remedy did not provide a "minimum adequate remedy" is consistent with the UCC). Importantly, the Court quoted the following passage,

> The circumstances here require that the compensation fulfill the essential purpose of all damage awards -- to make the innocent party whole. . . . While both parties to this action are giants in their areas of enterprise, we do not feel that the Uniform Commercial Code makes giant corporations fair game for either intentional sharp practices or a skewed rule of law. Under our justice system, the persona of the corporation is entitled to be treated fairly in commercial transactions. While we see no wilfulness or any evidence of subjective sharp practices in the performance of the contract, it is apparent that the

18

> remedy offered by Bucyrus-Erie's contract (concealed or masked in the warranty section) provides damages that are, in the circumstances, unconscionably low. The damages clause is unreasonable.

*Id.* at 624 (quoting *Phillips Petroleum Co. v. Bucyrus-Erie Co.*, 131 Wis. 2d 21 (1986)). If the Court upheld the exclusion of incidental and consequential damages here, Plaintiffs would solely be entitled to a refund of the gel coat's purchase price for any breach of warranty found by a trier of fact. The Court has held that such a remedy deprives Plaintiffs of the substantial value of their bargain. Under these circumstances, the exclusion of incidental and consequential damages renders the available damages unconscionably low. Thus, CCP's motion for reconsideration will be granted. CCP's motion for summary judgment on the limitation of remedies will be denied, and Plaintiffs' cross-motion will be granted.

**V.**

For the reasons set forth above, the Court will grant Post's reconsideration motion to the extent it used the 953 Series in its manufacturing process during 2002, and will deny the remainder of Post's motion. The Court will further grant CCP's motion to file a reply memorandum and its motion for reconsideration. Upon reconsideration, however, it will deny CCP's motion for summary judgment and grant Plaintiffs' cross-

19

motion on the limitation of remedies/exclusion of damages provision.  The Court will issue an appropriate Order.


Dated: September 18, 2007.

                                          s/ *Joseph E. Irenas*
                                        **JOSEPH E. IRENAS, S.U.S.D.J.**