```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

VIKING YACHT COMPANY, a New      :
Jersey Corporation; and POST     :
MARINE CO., INC., a New Jersey:
Corporation,                     :    HONORABLE JOSEPH E. IRENAS
                                 :
            Plaintiffs,           :
                                 :    CIVIL ACTION NO. 05-538(JEI)
       v.                        :
                                 :
COMPOSITES ONE LLC, a Foreign    :           **OPINION**
Limited Liability Company;       :
CURRAN COMPOSITES, INC., a       :
Missouri Corporation; C TWO      :
LLC, a Foreign Limited           :
Liability Company; and TOTAL     :
COMPOSITES, INC., a Delaware     :
Corporation joint d/b/a/ COOK    :
COMPOSITES AND POLYMERS, a       :
fictitiously named Delaware      :
Partnership,                     :
                                 :
            Defendants.          :

**APPEARANCES:**

HENRY J. TYLER, Esq.
P.O. Box 537
Mullica Hill, NJ 08062

BERGER SINGERMAN
By: Michael O. Weisz, Esq.
200 South Biscayne Boulevard
Suite 100
Miami, FL 33131
    Counsel for Plaintiffs

BUCHANAN INGERSOLL PC
By: Steven E. Bizar, Esq., Landon Y. Jones, Esq.
1835 Market Street, 14th Floor
Philadelphia, PA 19103

By: P. Kevin Bobson, Esq.
213 Market Street, 3rd Floor
Harrisburg, PA 17101
    Counsel of Defendant Cook Composites and Polymers

**IRENAS**, Senior District Judge:

Presently before the Court is Defendant Cook Composites and Polymers' ("CCP") Motion to Bifurcate the Trial of Liability and Damages (Docket No. 137). The Court heard oral argument on December 9, 2008, and has reviewed the submissions of the parties. For the reasons set forth below, Defendant's Motion is denied, but the Court reserves the right to bifurcate the trial at a later date should it become appropriate.

**I.**

Plaintiffs, Viking Yacht Company ("Viking") and Post Marine Co., Inc. ("Post") (collectively, "Plaintiffs") are luxury yacht manufacturers. They brought suit against CCP to recover damages resulting from the cracking of gel coats on yachts Plaintiffs manufactured using CCP's 953 Series gel. The Court has extensively discussed the facts and history of this case in two previously issued Opinions on cross Motions for Summary Judgment and Motions for Reconsideration. *Viking Yacht Co. v. Composites One, LLC*, 496 F. Supp. 2d 462 (D.N.J. July 26, 2007); *Viking Yacht Co. v. Composites One, LLC*, 2007 WL 2746713, No. 05-538 (D.N.J. Sept. 18, 2007). As a result of this Court's holding in its previous Opinions, Plaintiffs' surviving claims for trial are generally for 1) breach of express warranty, 2) fraudulent misrepresentation, and 3) violation of the New Jersey Consumer

2

Fraud Act, N.J.S.A. 56:8-2.[1]  The Court will briefly mention only those events that have transpired since the issuance of those Opinions.

In the past year, Plaintiffs have submitted Viking's 7th, 8th, and 9th, and Post's 5th Supplemental Answers to CCP's First Set of Interrogatories.  In those supplemental answers, Plaintiffs have substantially increased both the number of yachts reported to have gel cracking and the number of yachts where repairs have already been completed.[2]  Due to both the ongoing supplementation of the claim, and the evolving combination of estimated and actual damages, the precise amount of damages being sought is not yet known.  However, it is undisputed that the amount being sought is at least $110,000,000, exclusive of treble damages and attorney's fees.

The parties are also in the process of preparing the Joint Final Pretrial Order before Magistrate Judge Schneider.[3]  In the course of those preparations, and during oral argument on the

---

[1] The precise scope of the remaining claims is set forth in detail in the aforementioned Opinions.

[2] Viking's 7th and 8th, and Post's 5th Supplemental Answers, collectively increased the number of yachts reported to have gel cracking by 56 and the number of yachts where repairs have been completed increased by 18.  The Court first learned of Viking's 9th Supplemental Answer at oral argument on the instant Motion.  While neither party was able to provide the Court with an exact number of how many yachts were added in the most recent supplement, the parties approximated that number to be 24 to 30.

[3] The most recent conference was held December 10, 2008.

3

instant Motion, Plaintiffs have indicated that at trial they intend to offer over 100 exhibits, numbering thousands of pages. This is in addition to considerable proposed expert testimony by both parties. Most importantly, currently pending before this Court are renewed cross Motions for Summary Judgment on the remaining claims (Docket Nos. 169, 192), as well as four Motions to Exclude Expert Testimony (Docket Nos. 159, 160, 161, 162).

**II.**

Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). "The party seeking bifurcation has the burden of demonstrating that judicial economy would be promoted and that no party would be prejudiced by separate trials." *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997). The ultimate decision of whether or not to bifurcate trial is left to the discretion of the Court. *Id.* While no single factor is determinative, in considering whether to bifurcate, courts should consider whether (a) there will be overlap in testimony and evidence between the two proceedings, (b) the issues to be decided at trial are complex and the factfinder is likely to

4

become confused, (c) bifurcation will promote settlement, and (d) a single trial will cause unnecessary delay. *Rodin Properties-Shore Mall v. Cushman & Wakefield of Pa., Inc.*, 49 F. Supp. 2d 709, 721 (D.N.J. 1999).

**III.**

CCP alleges that there will be no need to repeat any testimony if the issues of liability and damages are bifurcated. However, neither party was able to adequately identify in which phase of the trial the question of proximate cause appropriately belongs. Plaintiffs need to prove that the alleged breach of warranty was indeed the cause of the gel cracking, and ultimately the reason they incurred damages. They intend to introduce evidence and testimony setting forth the history of their relationship with CCP as well as the reasons why CCP's alleged conduct led to Plaintiffs' incurring repair costs. As part of this proof, they intend to introduce evidence about business practices in the yacht industry generally to illustrate why it was necessary to perform the repairs despite possibly not being obligated to do so. Plaintiffs contend that there is a high likelihood they will need to repeat this testimony as they believe it is relevant to both the issues of liability and damages. While the Court is not certain whether the testimony would actually need to be repeated, it recognizes the difficulty

5

in making a determination at this time as to what evidence appropriately belongs in each phase of the case, and notes that the difficulty indicates the interrelatedness of the issues of liability and damages in this case.

CCP also argues that deciding the issue of liability first will save considerable time and confusion because a judgment in its favor on the issue of liability would obviate the need for a trial on damages. However, Plaintiffs proffer that 80% of their evidence relates to issues of liability. Therefore, there will be comparatively little to add solely on the issue of damages when considering the quantity of evidence being offered as a whole. As such, there is little reason to believe that determining liability first will save considerable time. In the instant case, the issue of liability is the more complicated issue, and it is unlikely that there will be considerable conservation of judicial resources by trying the issue of liability separate from the issue of damages. Unlike the case in *Princeton Biochemicals*, where "bifurcation [would] encourage judicial economy and efficiency, in light of the complexities of the damages issues," 160 F.R.D. at 259, this case is complex as a whole, and there is no indication that bifurcation will alleviate those complexities.

CCP also contends that the case will likely require the jury to consider complex expert testimony in the fields of chemistry

and polyester resins.  However, while Plaintiffs acknowledge the volume of exhibits and testimony, they argue that, "the principles involved are straightforward and although experts will explain the underlying concepts and mechanics of the process, the underlying explanations for the cause of the cracking are not overwhelming."  While the quantity of evidence to be offered may itself be overwhelming, the substance of the issues to be tried is not abnormally complicated, and the jury is no more likely to be confused by this testimony than any other expert testimony.

   A significant portion of oral argument was spent discussing the prejudicial effect to Defendant of a unified trial.  Defendant alleges that due to the considerable sum of damages being sought, a jury would be more likely to award some measure of damages out of sympathy for Plaintiffs, and not because CCP was actually liable.  To support this argument, CPP relies on *Miller v. N.J. Transit Authority Rail Operations*, 160 F.R.D. 37 (D.N.J. 1995), where the court trifurcated the trial into liability, damages, and indemnification phases because of the nature and severity of the plaintiff's injuries.  However, Plaintiffs correctly point out that *Miller* was a serious personal injury case, whereas this case is fundamentally a dispute between commercial entities.  As such, Plaintiffs argue that the jury will not be swayed merely by sympathy, and therefore there would be no prejudice to Defendant.  The Court agrees with this

distinction, and is unpersuaded that the sheer amount of damaged sought would increase the likelihood that a jury would simply award damages without actually finding CCP liable.

Lastly, CCP has not demonstrated that failing to bifurcate the trial will cause considerable delay. With the exception of the possibility that CPP may inspect up to 14 of the yachts disclosed by Plaintiffs in their Supplemental Responses, discovery is complete.[4] Additionally, the parties are currently in the process of preparing the Joint Final Pretrial Order, premised on a single, unified trial. Changing the structure of the case at this time would likely cause delay, not alleviate it.[5] In weighing all the considerations discussed above, CCP has failed to convince the Court that bifurcation of the trial is appropriate at this time.[6]

## V.

For the reasons set forth above, the Court is not completely

---

[4] Leave to conduct these additional inspections was granted by Order on December 9, 2008, and is to be completed by January 31, 2009.

[5] Similarly, there has been no indication whatsoever that the bifurcation of the trial in this case will in any way further efforts to settle the case.

[6] In light of the six other motions currently pending in this case, any of which could considerably change the landscape of the evidence introduced at trial, the Court reserves the right to revisit the issue of bifurcation at a later date should it see fit.

8

persuaded that it is in the interests of judicial economy to bifurcate the trial, and accordingly, Defendant's Motion to Bifurcate the Trial of Liability and Damages is denied.

Dated: December 16, 2008

 s/ Joseph E. Irenas  
**Joseph E. Irenas, S.U.S.D.J.**
