```
                         UNITED STATES DISTRICT COURT
                            DISTRICT OF NEW JERSEY

VIKING YACHT COMPANY, a New      :
Jersey Corporation; and POST     :
MARINE CO., INC., a New Jersey:
Corporation,                     :    HONORABLE JOSEPH E. IRENAS
                                 :
            Plaintiffs,           :
                                 :    CIVIL ACTION NO. 05-538 (JEI/AMD)
      v.                          :
                                 :
COMPOSITES ONE LLC, a Foreign    :
Limited Liability Company;       :           OPINION
CURRAN COMPOSITES, INC., a       :
Missouri Corporation; C TWO      :
LLC, a Foreign Limited           :
Liability Company; and TOTAL     :
COMPOSITES, INC., a Delaware     :
Corporation joint d/b/a/ COOK    :
COMPOSITES AND POLYMERS, a       :
fictitiously named Delaware      :
Partnership,                     :
                                 :
            Defendants.           :
```

**APPEARANCES:**

HENRY J. TYLER, Esq.
P.O. Box 537
Mullica Hill, NJ 08062

BERGER SINGERMAN
By: Michael O. Weisz, Esq.
200 South Biscayne Boulevard
Suite 100
Miami, FL 33131
    Counsel for Plaintiffs

BUCHANAN INGERSOLL PC
By: Steven E. Bizar, Esq., Landon Y. Jones, Esq.
1835 Market Street, 14th Floor
Philadelphia, PA 19103

By: P. Kevin Bobson, Esq.
213 Market Street, 3rd Floor
Harrisburg, PA 17101
    Counsel of Defendant Cook Composites and Polymers

**IRENAS**, Senior District Judge:

Presently before the Court is Defendant Cook Composites and Polymers' ("CCP") Motion to Exclude the Opinions and Testimony of Plaintiffs' Damages Experts (Docket No. 161). For the reasons set forth below, the Motion will be granted.

**I.**

The facts of this case have been set-out in several previous opinions[1] and need not be fully repeated here. At issue in this Motion are the expert reports and testimony of four boat dealers: Paul Barton of Portland Boat Works, Inc., Earle Hall of Bluewater Yacht Sales, Peter Maryott of Oyster Harbors Marine, and Philip Robeson of Integrity Marine. Messrs. Barton and Robeson are dealers of new Post Marine Co., Inc. ("Post") yachts. Messrs. Hall and Maryott are dealers of new Viking Yacht Company ("Viking") yachts.

As will be discussed further *infra*, the boat dealers' reports are extremely similar, stating almost identical opinions relevant to the issue of damages. Plaintiffs offer the experts' reports and testimony to prove how the 953 gel coat cracking problem has, or will, affect Plaintiffs' business. Plaintiffs explain that

---

[1] *See Viking Yacht Co., et al. v. Composites One LLC, et al.*, No. 05-538, 2008 WL 5244411 (D.N.J. Dec. 16, 2008); *Viking Yacht Co., et al. v. Composites One LLC, et al.*, No. 05-538, 2007 WL 2746713 (D.N.J. Sept. 18, 2007); *Viking Yacht Co., et al. v. Composites One LLC, et al.*, 496 F. Supp.2d 462 (D.N.J. 2007).

these experts will,

> testify from their specialized knowledge [of the luxury yacht sales market] that the Plaintiffs must fix each boat manufactured with the 953 gel coat because of the negative impact [that the cracking problem has] on the resale or trade-in value of the boats. . . . These Viking and Post dealers will not accept in trade or give customers the full value in trade of a boat manufactured with 953 gel coat unless Viking and Post agree to fix the boats or promise to fix them if they crack in the future. If the dealers cannot provide full value, the consumers will not trade-in their boats or buy another Viking or Post boat. . . . These boat dealers, by virtue of their experience, and their personal knowledge of the industry can speak, as experts, to the probable economic decisions which will be made by prospective Viking and Post customers.

(Pls. Opp. Br. at p. 24).

Each report contains 5 to 6 numbered paragraphs, each of which is identified as a "statement of opinion." Both Post dealers' reports opine as follows:

1. It is my opinion that POST must agree to guarantee the repair of all boats built with 953 gel coat, which have cracked or which may crack.

2. No boat made with 953 Series gel coat, which has cracked, or which may crack, will be accepted by me in trade without a guarantee from POST that it [the boat] will be repaired.

(Jones Cert. Ex. 1-- Barton Report; Ex. 4-- Robeson Report). The Viking dealers' reports contain almost identical opinions, (except that "VIKING" replaces "POST"); and with respect to the first point, Hall's report adds, "VIKING has agreed to fix or reimburse me for any expenses I incur in fixing these yachts." (See Jones Cert. Ex. 2-- Hall Report; Ex. 3-- Maryott Report).

Although each report articulates the third numbered opinion

3

somewhat differently, the basic opinion is the same: Viking and Post boats with cracked 953 gel coat are worth substantially less[2] than otherwise comparable boats. (See Barton, Hall, Maryott, and Robeson Reports).

Each dealers' report also states that

4. No new boat purchaser will agree to accept hundreds of thousands of dollars less in trade value and still agree to buy a new VIKING [POST].

(Hall and Maryott Reports).[3]

The fifth opinion is almost identical in all four reports:

5. Even boats made with 953 gel coat which have not cracked, have a significantly lower trade-in value because of their potential for cracking. This potential is recognized through customer knowledge and awareness of the problems, awareness of the problems by marine surveyors, and my own knowledge of the problem. I would not sell a 953 gel coat boat, even if it had not cracked, without disclosing its potential for cracking, [or] taking into account the financial liability I may incur [to fix such a boat] if such a boat is sold by me and later cracks.

(Barton, Hall, Maryott, and Robeson Reports).[4]

The Hall report contains no sixth opinion. The other three

---

[2] Barton's report is the only one to quantify the diminished value: "at least $200,000 to $300,000 less." (Jones Cert. Ex. 1).

[3] The Post dealers' reports vary slightly. Barton's report replaces "hundreds of thousands of dollars" with "$200,000 to $300,000." (Barton Report). Robeson's report states, "No boat owner will agree to accept the reduced trade value of the boat and also purchase a new POST." (Robeson Report).

[4] The bracketed portions of the quoted language appear in one report but not the others.

4

reports opine as follows:

> 6. POST would lose the ability to sell new boats if it did not agree to repair boats made with 953 Series gel coat. (Barton Report).

> 6. I believe that the gel coat cracking is most severe and arises in boats that are used or kept in cold weather. I am also aware that many VIKING yachts are moved by their owners seasonally, so the boats are almost always in warm weather. This underscores my refusal to accept any VIKING yacht made with 953 gel coat in trade unless VIKING agrees to fix the yacht. (Maryott Report).

> 6. I will not accept a POST yacht with 953 gel coat in trade, whether or not it has already experienced gel coat cracking without POST's assurance that it will be fixed. (Robeson Report).

CCP moves to exclude all four expert reports and attendant testimony at trial.

## II.

Federal Rule of Evidence 702 provides,

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist

the trier of fact." *Pineda v. Ford Motor Company*, 520 F.3d 237, 244 (3d Cir. 2008)(Irenas, S.D.J., sitting by designation) (internal citations omitted). As to the second requirement, the Third Circuit has stated that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Id.* (internal citations and quotations omitted).

*Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) instructs that the district court must act as a gatekeeper, "'ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*).

### III.

The Motion will be granted because (1) the actual expert opinions are not sufficiently reliable and (2) a majority of the experts' "opinions" are simply not expert opinions at all, but rather statements of fact. The Court will first address the testimony that is correctly identified as expert testimony and then address the remaining issue.[5]

---

[5] In light of this disposition, the Court need not address CCP's argument that the expert reports should be excluded because they were allegedly prepared and written by Plaintiffs' counsel rather than the witnesses themselves, in violation of Fed. R. Civ. P. 26(a)(2)(B).

6

**A.**

CCP stresses that all of the experts repeatedly state that their opinions rest on nothing more than their undisputedly extensive knowledge of, and experience in, the luxury boat industry. According to CCP, knowledge and experience is not enough; the absence of an underlying "verifiable or replicable methodology" renders the boat dealers' opinions inadmissible under Rule 702. (CCp's Moving Br. at p. 3).

The record, indeed, does not reveal any method employed by the boat dealers in reaching their opinions in this case. Each expert report contains the same section entitled, "The Basis for the Opinions." Under that section heading, all four experts repeatedly state that their opinions rest on "knowledge and experience" as boat dealers. When asked for the basis of their opinions at their depositions, each expert reiterated that their opinions were based only on their generalized experience and knowledge.

*Paul Barton*

Barton testified that he did not conduct any research or interview any customers or marine surveyors[6] when preparing his expert report and testimony. (Barton Dep. at p. 218-19). He

---

[6] Marine surveyors apparently "go through a boat to attest to the structural integrity of the boat; the operations systems . . . electrical, mechanical, plumbing. They will normally also comment on the cosmetics of . . . a particular boat being particularly good or, . . . medium, or bad." (Robeson Dep. at p. 110).

7

explained, "I didn't do any extra research. I deal with boat values on a daily basis." (Id. at p. 220). Even more specifically, Barton testified that, in formulating his opinions in this case, he did not review any documents or records; he relied solely on his "personal knowledge and recollection." (Id. at p. 243-44).[7] With respect to Barton's opinion that the 953 gel coat diminishes a boat's value by $200,000 to $300,000, he stated "these are only rough figures." (Id. at p. 280).[8]

*Earle Hall*

Hall also testified that he did not conduct any research, and did not review any records, documents or trade journals in preparing his expert report. (Hall Dep. at p. 102-03, 107). When asked how he formulated his responses to Plaintiffs counsel's questions during the preparation of the report, Hall said, "I live with this every day. I'm in the business of buying and selling Viking yachts and fixing them, so it's something I'm intimately

---

[7] (See also Barton Dep. at p. 234 ("Q: So in making your revisions to [your expert report] you were relying on your personal knowledge and experience; correct? A: Yes.; Q: You weren't relying on anything else? A: No."); p. 307 ("Q: And I just want to confirm your prior testimony that the opinions you've given in your report are based on your personal knowledge and experience; correct? A: Correct.; Q: No independent investigation? A: No."); p. 340-43 (same)).

[8] (See also Barton Dep. at p. 285-86 ("Q: So when you establish-- so the value of a Post yacht with 953 gel coat that has not cracked, is it 200,000 to 300,000 less? A: No.; Q: . . . what would the value of that boat be? A: As long-- and this is an estimate. Okay? . . . the value is diminished somewhat, and I can't quantify that, because there's a potential that it will crack.")).

8

involved in.  It's real easy for me to know what I'm talking about. . . . I'm basing [my opinion] on my experience."  (Id. at 103).⁹

*Peter Maryott*

Maryott testified that his expert report was not the result of research, surveys of marine surveyors, or conversations with customers; it was only based on his "experience and [his] history of knowing the value of boats."  (Maryott Dep. at p. 134-35).  Maryott also testified,

> Q: [B]etween the time you were asked to provide expert opinion and the time you gave your opinions, what did you do to give those opinions?
>
> A: I based my opinion on my experience.  I did not ask or discuss it with anyone else.
>
> Q: Okay. So you're basing all of your opinions in this case based [sic] on your personal experiences; is that correct?
>
> A: Yes.
>
> . . .
>
> Q: Nothing else.
>
> A: Correct.

---

⁹ (See also Hall Dep. at p. 107, "Q: Your responses [in formulating your report] were based only on your own experience, correct?  A: Correct."; p. 249-50, "Q: Are you basing your opinions on anything other than [your knowledge and experience]?  A: . . . [E]verything here is based on industry experience. . . . it's based on what I do seven days a week, every week of the year."; p. 274 "Q: Did you for purposes of preparing and signing [your expert report] specifically consult any hull files?  A: For the purposes of this document, no, because this document is a statement of my opinion.  My opinion comes off the hip.").

(Maryott Dep. at p. 188-89).[10]

*Philip Robeson*

Like the other boat dealers, Robeson testified that he did not review any documents, survey any customers, conduct market research, or review any books, articles or trade guides in preparing his expert report. (Robeson Dep. at p. 123-24, 126). Robeson further testified,

> Q: . . . [D]id you do anything or did you do any research in support of your [expert] statement?
>
> A: No. I based my opinion on my ongoing experience in the boat business and what I do day to day. So, no, I did not do any scientific research.

(Robeson Dep. at p. 125).[11]

The opinions' inadequate foundations are best illustrated using the example of the experts' unanimous opinion that boats with (and without) cracked 935 gel coat are worth less than other

---

[10] (See also Maryott Dep. at p. 193 ("Q: Are you relying on any economic principles? A: No, I am not.; Q: Are you relying on any economic theories? A: No, I am not."), p. 249 ("Q: Did you base your opinions on anything other than your own experience and knowledge as a boat dealer for the last 35 years? A: No, I did not.; Q: You didn't do any independent studies of the issues? A: No, I did not? . . . ; Q: Did you conduct any interviews? A: No, I did not."), p. 283 ("Q: So you were not basing any of your opinions in this case on any specific documents or records, correct? A: Correct.")).

[11] (See also Robeson Dep. at 130 ("Q: Did you consult with anybody at Integrity Marine with regard to the contents of your statement? A: No.; Q: You relied on your personal experience? A: Uh-huh."), p. 140 ("Q: The [expert] statement that you indicated you gave in this case, is it based on anything other than your personal knowledge as a boat dealer? A: No.")

comparable boats.[12] The value of any boat is certainly quantifiable in dollars, yet there is no evidence that any of the boat dealers even attempted to actually calculate a decrease in value for boats with 539 gel coat.[13] To paraphrase *Pineda*, nothing in the record suggests that any of the experts employed any process or technique in formulating their expert opinion. *See Pineda,* 520 F.3d at 244 ("an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.").[14]

---

[12] Indeed, this may be the only opinion that is properly identified as an expert opinion. *See* Section III. B. *infra*.

[13] Maryott testified that his opinion that boats with cracked gel coat were worth less was based on his experience, explaining, "I don't mean to give you a smart answer but I would think that it would be fairly easy for anyone to ascertain that a vessel that has cracks in the gel coat is worth substantially less than one that does not have cracks in it. No different than if you went out and looked at a vehicle with a dent in the side and one that did not." (Maryott Dep. at p. 132). (See also Robeson Dep. at p. 14 ("part of my conclusion is based on, you know, quite frankly . . . what I would refer to as common sense in the marketplace, where if somebody has two boats beside each other and they know that one has cracks or has the potential to crack, they're going to be less inclined to buy that boat than they are the one that they know has no problem and won't have any problem."), p. 147 ("Q: . . . tell me what about these customers leads you to the conclusion that most people would not come to buy a boat that may have a cracking issue? A: As I said, I think it goes back more to common sense. . . . Q: Would you have to be a boat dealer, in your view, to come to that conclusion? A: At this day and age, probably not.")).

[14] Additionally, such vague testimony that the 953 gel coat generally decreases the value of a boat is not very helpful to the trier of fact, who will be tasked with quantifying damages in a dollar figure if liability is found. *See* testimony quoted at n. 13, *supra*.

11

Plaintiffs point to testimony that the boat dealers employ various methods to place a value on any given boat *during the course of the boat dealers' business*.[15] However, Rule 702 focuses on the principles and methods *that produce an expert's testimony*. The fact that the boat dealers employ various valuation methods to place a value on a particular boat during a particular transaction says nothing about what process or method produced their opinion in this case regarding the value of all boats built with 953 gel coat.[16] As discussed above, in formulating their opinions in this case, each boat dealer testified that they relied only on their knowledge and experience.[17]

Thus, Plaintiffs ask the Court to admit the opinions that (all else being equal) the value of any boat with 953 gel coat is hundreds of thousands of dollars less just because those opinions come from people who have undisputedly extensive knowledge and

---

[15] The boat dealers all testified that in the general course of their business they consult trade publications and websites, and consider competitors' prices when determining a trade value for a given boat. (Barton Dep. at p. 158-65; Hall Dep. at p. 229-230; Maryott Dep. at p. 253-54; Robeson Dep. at p. 12-17).

[16] The Court agrees with CCP's observation that "the boat dealers employ no methodology that links their personal experiences to their industry-wide opinions." (CCP's Reply Brief at p. 4).

[17] (See also, Maryott Dep. at p. 284 (Q: In coming up with the many hundreds of thousands of dollars figure [in decreased boat value], did you consult any websites? A: No.; Q: Any trade publications? A: No.; Q: Did you look at any book values? A: No.")).

12

experience in selling boats.  In direct response to CCP's objection that the boat dealers' testimony lacks a reliable foundation, Plaintiff argues, "Defendants ignore the tremendous store of knowledge possessed by these experts."  (Pls' Opposition Br. at p. 24).  But Rule 702 makes clear that knowledge and experience may be sufficient to *qualify* an expert, but are not sufficient to render the expert's testimony *admissible*.  Admissibility depends on reliability and relevance.  *See Kumho*, 526 U.S. at 141.

With respect to the portions of the experts' reports and testimony that are actual expert opinions, the Court agrees with CCP that each expert's opinion is not the product of any principle, method, analytical process or technique, *see* Fed. R. Evid. 702; *Pineda v. Ford Motor Company*, 520 F.3d at 244, therefore the expert reports and testimony that are properly identified as expert opinions must be excluded as unreliable.[18]

---

[18] *See Murray v. Marina District Development Co.*, No. 07-1147, 2008 U.S. App. LEXIS 11869 at *7-8 (3d Cir. June 4, 2008)(affirming district court's exclusion of expert testimony where the expert's "report and deposition testimony fail to demonstrate any methodology, let alone peer-reviewed or generally accepted methodology underlying his opinion."); *Scrofani v. Stihl Inc.*, 44 F.App'x 559, 562 (3d Cir. 2002) (affirming district court's exclusion of expert testimony, explaining that the expert's opinions were not "the product of reliable methods applied to the facts in a reliable manner" because the expert "employed absolutely no methodology at all, merely setting forth a series of unsubstantiated opinions.") (internal quotations omitted).

**B.**

With respect to a large portion of the boat dealers' reports and testimony, the above-discussed lack of methodology is not at all surprising, because the so-called "opinions" are actually straightforward statements of fact. For example, the boat dealers agree that they will not accept in trade any boat with cracked 953 gel coat. This is not an opinion at all. It is a statement by each boat dealer as to what he, personally, will not do.[19] The same may be said for the boat dealers' statements that they will not accept in trade a boat with intact 953 gel unless Plaintiffs guarantee that it won't crack.[20] Each witness is merely testifying about his own business decision.

Similarly, the boat dealers' "opinions" that Plaintiffs must guarantee the repair of all boats built with 953 gel coat, is nothing more than a conclusion they drew based on their own

---

[19] (See, e.g., Barton Dep. at p. 201, "A: I told [Plaintiffs' attorney] that . . . I was being affected by the gel coat problem because I was afraid to take any boat in trade that had this problem. . . . Q: Okay. Is that an opinion? A: No. That's – that's a fact.").

[20] (See, e.g., Maryott Dep. at p. 212 ("A: . . . I said that I would not accept a boat in trade without some type of guarantee from Viking that the boat would be repaired. Q: Is that your opinion or is that a fact? A: That's a fact."); p. 262 ("A: . . . Oyster Harbors Marine will not accept a Viking boat built in that period [when 953 gel was used] without an assurance from Viking. Q: Is that a business policy that your company has? A: Yes."); Robeson Dep. at p. 217 ("A: . . . I [won't] trade a 953 boat . . . unless I knew Post was going to take care of it. . . . Q: Is that a . . . business decision that Integrity has made? A: Absolutely.")).

14

business practices: they will not accept boats with 953 gel coat without a guarantee, Plaintiffs need the dealers to sell their boats, therefore Plaintiffs must guarantee to fix any 953 gel coat that cracks. Barton testified,

> Q: With regard to the boats that have cracked, why do you believe Post must guarantee the repair of those boats?
>
> A: Because from my personal point of view, if I get involved in the trade-- I'm a Post dealer and I-- I can take any one of those boats in trade at any given time, and they're cracked, they're-- they're not tradable.
> I don't-- I wouldn't take them in trade. Therefore it affects my business. Therefore, that's my opinion.

(Barton Dep. at p. 254).

Maryott similarly testified,

> [I]n my opinion, if Viking did not agree to repair these boats, we [Oyster Harbors Marine] would have a very difficult time selling these boats and our customers would definitely not purchase another one.
> . . .
> I think it's important that we have some type of commitment from Viking that if one of these boats comes in that we've sold, and we take the boat in trade and we're going to sell that coat to a customer of ours, in order for us to sell that boat, we have to have the same assurance that if the there's a problem with the gel coat on that boat down the road, someone is going to take care of it.
> Otherwise, the purchaser is going to comeback to Oyster Harbors Marine for a remedy to this problem.

(Maryott Dep. at p. 194-95, 207-08).

Robeson also explained the basis for his opinion that Post must guarantee all boats built with 953 gel coat:

> A: I formulated my policy that I would not take another [953 gel coat boat] in trade without having some assurance from Post that something would be done

15

>     about it if need be. . . .
>
>     . . .
>
>     Q: And they must do something about it because you're
>     demanding that they do something about it?
>
>     A: Yes.
>
> (Robeson Dep. at p. 252).

Plaintiffs apparently recognize that much of their proposed expert testimony is fact testimony, because they assert that if the Court grants the Motion to Exclude, Plaintiffs will simply call the boat dealers as fact witnesses. CCP objects, arguing that they will be prejudiced by such a change in course because they only deposed the boat dealers as expert (not fact) witnesses, and never had an opportunity to "seek other fact-based discovery" from the boat dealers.

The Court reserves decision on this issue until the time of trial because the proffered fact testimony's relevance cannot be determined at the present. If Plaintiffs decide to call any of the boat dealers as fact witnesses at trial, Plaintiffs must submit a detailed statement, setting forth the substance of the proposed testimony in question and answer form, ten days prior to the testimony. The Court will then rule on admissibility.[21]

---

[21] Based on the present record, the Court does not believe that additional fact discovery from the boat dealers is necessary. Indeed, while CCP asserts it has not had an opportunity to seek additional fact discovery, it does not identify what additional discovery would be necessary. Moreover, the boat dealers' reports include many factual statements that were explored during depositions.

**IV.**

In light of the foregoing, CCP's Motion to Exclude the Expert Testimony of the boat dealers will be granted. The Court will issue an appropriate order.

Dated: April 27, 2009

                                               s/ Joseph E. Irenas  
                                               **Joseph E. Irenas, S.U.S.D.J.**