UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

VIKING YACHT COMPANY, a New   :
Jersey Corporation; and POST   :
MARINE CO., INC., a New Jersey:
Corporation,   :      HONORABLE JOSEPH E. IRENAS
  :
      Plaintiffs,   :
  :      CIV. NO. 05-538(JEI/JS)
    v.   :
  :
COMPOSITES ONE LLC, a Foreign :         **OPINION**
Limited Liability Company;   :
CURRAN COMPOSITES, INC., a   :
Missouri Corporation; C TWO   :
LLC, a Foreign Limited   :
Liability Company; and TOTAL   :
COMPOSITES, INC., a Delaware   :
Corporation joint d/b/a/ COOK :
COMPOSITES AND POLYMERS, a   :
fictitiously named Delaware   :
Partnership,   :
  :
        Defendants.   :

**APPEARANCES:**

HENRY J. TYLER, Esq.
P.O. Box 537
Mullica Hill, NJ 08062

BERGER SINGERMAN
By: Michael O. Weisz, Esq.
200 South Biscayne Boulevard
Suite 100
Miami, FL 33131
    Counsel for Plaintiffs

BUCHANAN INGERSOLL PC
By: Steven E. Bizar, Esq., Landon Y. Jones, Esq.
1835 Market Street, 14th Floor
Philadelphia, PA 19103

By: P. Kevin Bobson, Esq.
213 Market Street, 3rd Floor
Harrisburg, PA 17101
    Counsel of Defendant Cook Composites and Polymers

**IRENAS,** Senior District Judge:

Presently before the Court is Plaintiffs' Motion to Exclude Portions of the Report and Testimony of Defendant's Chemical Expert A. Brent Strong, Ph.D. (Docket No. 159).  The Court has reviewed the submissions of the parties, and for the reasons set forth below, Plaintiffs' Motion is granted in part and denied in part.

## I.

Viking Yacht Company ("Viking") and Post Marine Co., Inc. ("Post") (collectively, "Plaintiffs") are luxury yacht manufacturers.  They brought suit against Defendant Cook Composites and Polymers, Co. ("CCP") to recover damages resulting from the cracking of gel coats on yachts Plaintiffs manufactured using CCP's 953 Series gel.  The Court has extensively discussed the facts and history of this case in its previously issued opinions on cross Motions for Summary Judgment, Motions for Reconsideration, the more recent Motion to Bifurcate the Trial of Liability and Damages.[1]  As a result of this Court's previous holdings, Plaintiffs' surviving claims are:  (1) breach of express warranty, (2) fraudulent misrepresentation, and (3)

_____

[1] *See Viking Yacht Co. v. Composites One, LLC*, 2008 WL 5244411, No. 05-538 (D.N.J. Dec. 16, 2008)*; Viking Yacht Co. v. Composites One, LLC*, 2007 WL 2746713, No. 05-538 (D.N.J. Sept. 18, 2007); *Viking Yacht Co. v. Composites One, LLC*, 496 F. Supp. 2d 462 (D.N.J. 2007).

violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §
56:8-2.

CCP retained Dr. Strong, who holds a Ph.D. in chemistry and
is a professor of mechanical engineering technology at Brigham
Young University, as a liability expert.  He was asked to do the
following:

> (1) examine the chemical natures of the 952 Series and
> 953 Series gel coats and to determine, from the basic
> chemical principles, which of the gel coats is more
> likely to have a higher elongation; (2) examine the
> proprietary test for elongation used by CCP (called the
> PE-210 test) to determine if the test procedures are
> appropriate for such determinations, and to use the test
> in conducting a study using statistical methods to verify
> the elongations of the 952 Series and 953 Series gel
> coats; and (3) comment on the opinion given by Professor
> Caruthers who has been retained by the Plaintiffs and
> their counsel as a scientific liability expert in this
> case.

(Strong Rep. ¶ 3.)  In preparing his report, Dr. Strong visited
both of Plaintiffs' facilities, visually inspected several boats
at a marina on the New Jersey shore, performed a statistical
analysis of the PE-210 test, consulted other scholars' works, and
reviewed other evidence in this case.

Dr. Strong's report is divided into several sections:  an
"Introduction" (*Id.* ¶¶ 1-6), "Chemical Theory Related to Gel
Coats and Composite Materials" (*Id.* ¶¶ 7-37), "Chemical
Formulation Analysis for Elongation" (*Id.* ¶¶ 38-50), "Elongation
Testing" (*Id.* ¶¶ 51-72), "Weathering, UV Degradation, and Thermo-
oxidative Degradation" (*Id.* ¶¶ 73-88), and a "Summary of

Conclusions" (*Id.* ¶¶ 89-93).

In the instant Motion, Plaintiffs object to the majority of the "Chemical Theory" section as well as two of Dr. Strong's overall "Conclusions." Specifically, they seek to exclude (1) paragraphs 12, 17-32, 34, 36-37, 91, and 92 in their entirety, (2) all but the first three sentences of paragraph 33, (3) all but the first sentence of paragraph 35, and (4) the first phrase of paragraph 38.

For the foregoing reasons, Plaintiffs' Motion will be granted in part and denied in part.

## II.

"Under the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Federal Rule of Evidence 702 "has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir.

2008) (Irenas, S.D.J., sitting by designation).[2]  Admissibility

under the third requirement, the "fit" requirement, "depends in

part on 'the proffered connection between the scientific research

or test result to be presented and particular disputed factual

issues in the case.'"  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d

717, 743 (3d Cir. 1994) (quoting *United States v. Downing*, 753

F.2d 1224, 1237 (3d Cir. 1985)).  "The burden is on the proponent

of the testimony to prove its admissibility by a preponderance of

proof."  *NN&R, Inc. v. One Beacon Ins. Group*, No. 03-5011, 2006

WL 2845703, at *2 (D.N.J. Sept. 29, 2006).

"An expert opinion is not admissible if the court concludes

that an opinion based upon particular facts cannot be grounded

upon those facts."  *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82

F.3d 69, 75 (3d Cir. 1996).  Further, "if an expert opinion is

based on speculation or conjecture, it may be stricken."  *Id.*;

*see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But

---

[2]Rule 702 specifically provides:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the
> product of reliable principles and methods, and (3) the
> witness has applied the principles and methods reliably
> to the facts of the case.

Fed. R. Evid. 702.

nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

## III.

### A.

The majority of Plaintiffs' objections to Dr. Strong's report relate to his conclusion that something other than the failure of the 953 Series gel caused the cracking,[3] and his general discussion of alternative causes for gel coat cracking

---

[3] Paragraph 91 of Dr. Strong's report states:
The formulation of the 953 Series gel coat is appropriate. The performance of boats made by other boat manufacturers, such as Anthony Smith at Performance Cruising, shows that the 953 Series gel coat performs well. This excellent performance suggest that the cracking difficulties encountered in boats made by Viking and Post are not in the gel coat, but, rather, in some other factor beyond or outside CCP's control (such as design, manufacturing, use, environment, etc.). The performance of the gel coat, especially in light of the many good cases of 953 Series gel coat usage, is chiefly a function of the design and manufacturing of the boat or the environment in which it is used. Therefore, the cause of the cracking problem lies with Post or Viking, or possibly, with the ultimate consumer who has not used the boat properly, or it could also be the result of environmental factors.
(Strong Rep. ¶ 91.)

which, in part, formed the basis of that opinion.[4]  Plaintiffs

argue that Dr. Strong's conclusions are unreliable because they

were outside the scope of his engagement, that he did not test

his opinions, and that his methodology of relying extensively on

others' research and reports was inappropriate.[5]  However, CCP

argues that the opinions Dr. Strong intends to offer are both

limited in nature, and within the scope of his engagement.

Specifically, CCP states in its brief that Dr. Strong is not

being offered to pinpoint what the cause of the gel coat cracking

*was*, but rather, for the opinion that because "a gel coat

formulation error was *not* the cause of cracking . . . that the

cause of the gel coat cracking was therefore likely one of the

---

[4] The alternative causes of gel coat cracking discussed in
Dr. Strong's report include: calibration of the spraying
equipment (Strong Rep. ¶ 12), gel coat storage (*Id.* ¶¶ 19-20),
cure time (*Id.* ¶ 22), gel coat thickness (*Id.* ¶¶ 23-24), walking
on the gel coat (*Id.* ¶ 26), sticking during removal from the mold
(*Id.*), temperature (*Id.* ¶ 28), and, the addition of color
pigments or dyes (*Id.* ¶ 34).

[5] Dr. Strong quotes the following articles in the challenged
paragraphs: Hank Yeagley, *Achieving the Ultimate Marine Gel Coat
Finish*, **Composites Manufacturing**, April 2006 (Strong Rep. ¶¶ 12,
19, 20, 23, 30, 35); James W. Smith, *Cracking of Gel Coated
Composites I: Macroscopic and Fractographic Analysis*, 43rd Annual
Conference, Composites Institute, The Society of the Plastics
Industry, Inc., Feb. 1-5, 1988, at Session 15-E/1 (Strong Rep. ¶
17); W.H. Brueggemann *et al.*, *Cracking of Gel Coated Composites
II: Practical Steps for Prevention*, 43rd Annual Conference,
Composites Institute, The Society of the Plastics Industry, Inc.,
Feb. 1-5, 1988, at Session 15/F-1 (Strong Rep. ¶ 18); Bob
Lacovara, *Getting a Handle on Gel Coat Cracking*, Composites
Fabrication, CFA, 1996 (Strong Dep. ¶¶ 19, 22, 23, 24, 25, 26,
28, 29, 34).

*other* well-documented general causes of gel coat cracking."
(Def. Br. at 6.)  Importantly, Plaintiffs do not challenge the
testing Dr. Strong did perform on the gel,[6] nor his direct
refutation of Dr. Caruthers's conclusions.[7]  Additionally, CCP
argues that it was appropriate under Rule 703 for Dr. Strong to
have relied on the available literature and other evidence in the
case in forming his opinions.

In their brief, Plaintiffs attempt at length to persuade the
Court that Dr. Strong's conclusion, that "[t]he formulation of
the 953 Series gel coat is appropriate," is outside the scope of
his engagement, and that no testing was done to support this
conclusion.  (Strong Rep. ¶ 91.)  Plaintiffs both misconstrue Dr.
Strong's conclusion, and seemingly overlook the testing Dr.
Strong did perform.  Dr. Strong was engaged by CCP for the

_____

[6] Dr. Strong repeated CCP's tests to determine the relative
flexibility of the 953 Series gel.  As Dr. Strong discussed in
paragraphs 61 through 67 of his report, he "observed the
performance of the PE-210 test and [has] reviewed the test
procedures."  (Strong Rep. ¶ 61.)  He then consulted with a
statistician to perform a "gage reliability and repeatability (R
& R) study . . . for investigating the reliability of the PE-210
test in determining a difference of elongation between 952 Series
and 953 Series gel coats."  (Strong Rep. ¶ 62.)  Paragraphs 39
through 90 of Dr. Strong's report remain wholly unchallenged by
this Motion.  *See* Pl. Br. at 3.

[7] Dr. Caruthers concluded that the PE-210 test did not
accurately measure the long term flexibility of the 953 Series
gel coat under Plaintiffs' use conditions, and that the 953
Series gel coat was not properly formulated, particularly because
of the inclusion of adipic acid, and the exclusion of a UV
stabilizer.

purpose of examining the formulations of the 952 and 953 Series gels to see which has a greater flexibility, examine CCP's proprietary testing to verify the results, and to directly refute the opinions of Plaintiffs' chemicals expert Dr. Caruthers. (*See* Strong Rep. ¶ 3.)

Dr. Strong does not deny that he did not conduct any testing to determine whether the other possible causes were the actual cause of the cracking in this case. (*See, e.g.*, Strong Dep. 124:16-125:13, 139:16-23, 188:17-23, 231:21-232:11.) However, he also explains that he was not engaged for the purpose of rendering an opinion on the ultimate cause of the gel cracking. (*See* Strong Rep. ¶ 3; *see, e.g.*, Strong Dep. 13:7-10, 15:18-16:8, 261:12-262:16.) This point is important because it explains why Dr. Strong did not conduct any additional tests. (*See, e.g.*, Strong Dep. 125:11, 139:22-23.) Rather than impugn the reliability Dr. Strong's conclusions, this supports CCP's explanation of their limited nature: "[T]hat the cracking experienced in some Viking and Post yachts was *not caused* by a relative lack of flexibility in 953 Series gel coat, but rather resulted from 'some factor beyond or outside CCP's control (such as the design, manufacturing, use, environment, etc.)'" (Def. Br. at 21-22 (quoting Strong Rep. ¶ 91).) Simply stated, Dr. Strong offers an opinion on what the cause was *not*, but no conclusive opinion on what the cause *was*.

With this limitation on Dr. Strong's opinion in mind, the Court will examine whether the testing Dr. Strong performed form a reliable basis for his opinion. As noted above, Dr. Strong did in fact repeat the PE-210 test, as well as conduct a statistical analysis of the results, and Plaintiffs do not object to this portion of his report. *See supra* Note 6.[8]

Plaintiffs' more serious objection seems to be to Dr. Strong's corollary opinion that the cracking was likely caused by something other than a defect in the formulation of the 953 Series gel coat. To that end, Plaintiffs point to instance after instance in Dr. Strong's deposition where he states that he did not test any particular alternative cause. (*See, e.g.*, Strong Dep. 124:16-125:13, 139:16-23, 188:17-23, 231:21-232:11.) While Dr. Strong did not test each of these alternative causes, he did rely heavily on industry publications, academic articles, and the record evidence in concluding that it was possible that they could have contributed to the cracking.

CCP is not required to prove that any of these alternative causes was the actual cause. Rather, as a defense to Plaintiffs'

---

[8] While the Plaintiffs do not actually challenge these portions of his report, the Court nonetheless notes that the reliability factors set out in *Daubert* and *United States v. Downing*, 753 F.2d 1224 (3d Cir.1985), support the admissibility of Dr. Strong's conclusion. *See Paoli,* 35 F.3d at 742 n.8. Of particular importance here is that Dr. Strong's qualifications have not been challenged, he identified a testable hypothesis, performed a scientific test, and consulted with a statistician to help analyze the results.

claim that the relative lack of flexibility was the cause, CCP is merely attempting to introduce evidence that other causes are possible and known to occur frequently. This is not a case where Dr. Strong is offering testimony of specific causation, but quite the opposite. Dr. Strong is offering testimony that one particular thing, namely a relative lack of flexibility in the 953 Series gel coat, was not the cause, and therefore it stands to reason that any of the other known causes might have played a role. Similarly, the references that Dr. Strong makes to the Performance Cruising's successful use of the 953 Series gel coat is a direct challenge to Dr. Caruthers's opinion that the lack of cracking in those boats is "irrelevant."[9]

Plaintiffs argue that this case is similar to *Oddi v. Ford Motor Co.*, where the Third Circuit affirmed the district court's exclusion of expert testimony because the purported expert had not tested his hypotheses and his inquiry was "haphazard" and "intuitive." 234 F.3d 136, 156 (3d Cir. 2000). In *Oddi*, a truck driver was injured in an accident, and the plaintiff wanted to offer an "accident reconstruction/design engineer . . . to testify that the truck was defectively designed." *Id.* at 146.

---

[9] Plaintiffs argue that evidence regarding Performance Cruising is irrelevant because Performance Cruising manufactures trimarans and catamarans, which are at least arguably distinguishable from the power yachts made by Post and Viking. Plaintiffs are free to address Dr. Strong's reliance on evidence about Performance Cruising's boats on cross-examination.

11

As is the case here, the expert's qualifications were not challenged, but rather the methodology used in reaching his conclusions.  There, the purported expert offered several possibilities for how the defect in the plaintiff's truck could have been fixed to avoid an injury.  However, upon review of his deposition testimony, the court concluded that he had conducted no testing to support his theories.  Furthermore, the expert failed to properly consider alternative theories.  *Id.* at 158.

Unlike the expert in *Oddi*, Dr. Strong did actually perform his own tests to reach his primary conclusion that the 953 Series gel coat was more flexible than the 952 Series.  Additionally, he relied on other scientific reports and articles to reach the corollary conclusion that the gel cracking was likely caused by something other than a lack of elongation in the 953 Series.  It may be true that Dr. Strong's conclusions would be more strongly supported if he had confirmed his theories regarding alternative causes via a laboratory experiment.  However, the Third Circuit has been clear that an expert's testimony resting on "good grounds" is admissible, "even if the judge thinks that there are better grounds for some alternative conclusion, and even if the judge thinks that a scientist's methodology has some flaws such that if they had been corrected, the scientist would have reached a different result."  *Paoli*, 35 F.3d at 744.

In addition to challenging the overall conclusions in

paragraph 91 of Dr. Strong's report, discussed above, Plaintiffs
also challenge the materials he used to support his conclusions.
Paragraphs 12, 17-30, 34, 36, and 37, and all but the first
sentence of paragraph 35, discuss the general chemical theory of
gel coats and composites, as well as common causes of cracking,
and contain many restatements of, and quotations from, other
scholarly articles and reports. Plaintiffs argue that Dr. Strong
was not justified in relying on these various scholarly reports
and articles in formulating his opinion that something other than
a failure of the 953 Series gel caused the cracking. Thus,
Plaintiffs maintain that Dr. Strong's opinion is unreliable
because he incorporated unreliable data into his methodology when
he included excerpts of these other scholarly works in his
report. Plaintiffs likewise challenge that Dr. Strong cannot
rely on hearsay evidence in forming the basis of his opinion.

Plaintiffs' challenge to the reliability of the data
underlying Dr. Strong's opinion implicates Federal Rule of
Evidence 703. Rule 703 provides, in relevant part:

> The facts or data in the particular case upon which an
> expert bases an opinion or inference may be those
> perceived by or made known to the expert at or before the
> hearing. If of a type reasonably relied upon by experts
> in the particular field in forming opinions or inferences
> upon the subject, the facts or data need not be
> admissible in evidence in order for the opinion or
> inference to be admitted.

To determine whether "an expert's data is of a type
reasonably relied on by experts in the field," the Court must

"assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert." *Montgomery County v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) (internal quotation marks and citation omitted). "If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded." *Id.* (internal quotation marks omitted).

Plaintiffs challenge that they should not be admitted because Dr. Strong did not specifically test whether each of the proffered potential causes for cracking were actually present in this case. As discussed above, Dr. Strong is not opining that any of these alternative causes were the actual cause, but merely that they are other known causes of gel coat cracking. Furthermore, as can be seen, Dr. Strong has supported his opinions with precisely the type of facts and data "relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703.

One example,[10] Paragraph 12, discusses and quotes Yeagley on the importance of daily calibration of the spraying equipment. Dr. Strong a basis for believing that Plaintiffs' equipment was not properly calibrated. In his deposition he stated that "[i]n my inquiries of both Post and Viking personnel, they did not

_____

[10] It is not necessary to discuss each of these paragraphs individually, as Plaintiffs allege that the same the problems are common to them all.

14

calibrate their equipment properly.  And it is my, my assertion and belief that because they did not calibrate it properly, it was unknown to them whether [the gel coat] was being applied properly, and therefore, it was not."  (Strong Dep. 45:4-11.) Dr. Strong provides the quote from Yeagley as scholarly support to connect his observation to his opinion that it is possible that calibration problems could have led to cracking.

Similarly, paragraph 19, which discusses both the need to stir the gel coat prior to use and the temperature at which the gel coats should be stored, contains lengthy quotes from both the Yeagley and Lacovara papers.  Dr. Strong suspected that there was a problem with the mixing (*Id.* 230:8-14), and felt that "the temperature uniformity was not properly controlled" at the Post facility (*Id.* 238:5-7).  The quoted articles support the proposition that if the cracking was not caused by the relative lack of flexibility of 953 Series gel coat, it could have been caused by something done by Plaintiffs.

This Court has previously noted the importance of experts examining relevant literature in forming a basis for their opinions.  *See Milanowicz v. The Raymond Corp.*, 148 F. Supp. 2d 525, 533 (D.N.J. 2001) ("Courts should determine whether an expert has supported his conclusions through discussion of the relevant literature, broadly defined.  This component could be satisfied by general design manuals or industry-specific

journals. . . . Surveying relevant literature is one aspect of *Daubert*'s peer review prong.").  That is precisely what Dr. Strong has done in the "Chemical Theory" portion of his report.

The issue in paragraphs 36 and 37, which discuss boats that did not exhibit cracking made by Plaintiffs as well as another manufacturer, Performance Cruising, using the same batches of 953 Series gel where there was not cracking is slightly different than the other paragraphs discussed above.  Unlike those statements based on considerable scientific research, the statements in these two paragraphs are not based on Dr. Strong's direct observation of any yachts, nor on general scientific knowledge.  Rather, they are based on representations by Viking and Post personnel and "the deposition and declaration of Tony Smith."  (Strong Dep. 122:22-23.)

In all likelihood, Tony Smith's deposition and certification were the only sources available to Strong to provide evidence of whether there had been cracking in boats made by other manufacturers using 953 Series gel.  Additionally, Smith's deposition and certification are undoubtedly part of the record in this case, and CCP intends to offer his testimony at trial. Thus, the Court concludes that the representations made by Smith were sufficiently reliable to permit Strong to incorporate them into his analysis.  Overall, the challenged portions as a whole are very informative when it comes to other possible causes of

gel coat cracking, and could be very helpful to jury for that reason alone. Furthermore, there can be little question that the scholarly articles and reports on which Dr. Strong relies satisfy the requirements of Rule 703. Plaintiffs, of course, will have an opportunity to explore Dr. Strong's reliance on both the scholarly works and Smith's testimony via cross-examination.[11] [12]

---

[11] Plaintiffs also challenge that the scholarly articles and Smith's testimony are hearsay, and therefore an impermissible basis for Dr. Strong's opinion. However, Rule 703 expressly contemplates the use of hearsay evidence by experts. The Rule states in pertinent part:

> If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. As discussed above, there is little question that it was appropriate for Dr. Strong to rely on the scholarly works and other evidence that he did as they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." The fact that they may be hearsay in no way impugns their presence in his report. The Court reserves judgment on whether and of the actual alleged hearsay is itself admissible until either party seeks to admit it at trial.

[12] Plaintiffs also object to the first phrase of paragraph 38. Dr. Strong begins his critique of Dr. Caruthers's conclusions with the phrase "In spite of these obvious boat manufacturer- or use-related issues . . . ." (Strong Rep. ¶ 38.) While it is unclear from their briefs, Plaintiffs presumably object to the use of the word "obvious" when referring to the other causes of gel coat cracking. If Dr. Strong uses the word "obvious" in his testimony, Plaintiffs are free to explore the accuracy of the statement in cross-examination.

As such, Plaintiffs' Motion is denied with regard to paragraphs 12, 17-30, 35-38, and 91.[13]

## B.

Paragraphs 31, 32, and all but the first three sentences of paragraph 33 deal with a different issue, namely offering conclusions on an ultimate issue before the jury outside of Dr. Strong's area of expertise.  One of the remaining claims is for breach of express warranty.  In the previous motions before the Court, summary judgment was denied on the issue of the precise meaning of CCP's warranty.[14]  In paragraph 31, Dr. Strong opines that, "[i]n light of these issues of design and manufacturing, it is not surprising that CCP only warrants that the product will meet CCP's specifications at the time of shipment."  (Strong Rep.

_____

[13] As Plaintiffs themselves note in their reply brief, "*Daubert* does not set up a test of which opinion has the best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology."  *Kannankeril*, 128 F.3d at 806.  The disagreement on this issue between Drs. Caruthers and Strong is precisely within "the range where experts might reasonably differ, and where the jury must decide among the conflicting views of different experts . . . ."  *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).

[14] *See Viking*, 496 F. Supp. 2d at 470 ("The Court, having held that CCP's representations in the PB-58 created an express warranty that was not disclaimed, cannot decide as a matter of law whether this warranty was breached.  The warranty for 'improved flexibility' is vague.  A reasonable jury could find that a warranty for improved flexibility does not include a warranty against cracking after use and/or storage in cold climates by the end purchaser of the yachts.").

¶ 31.)  Dr. Strong then continues by quoting portions of the

warranty.  He also states that "[w]arranty limitations in areas

that are out of the control company are certainly reasonable.

Likewise, boat manufacturers limit their warranties for

situations that are outside their control."  (*Id.* ¶ 32.)

While it is true that in certain instances, an expert with

particular expertise in a complex field may be permitted to give

an opinion on whether a particular course of conduct was

reasonable, Dr. Strong is not an expert in the field of

manufacturers' warranties.[15]  His expertise is offered in the

field of chemical engineering, and his credentials support

expertise only in that area.  Additionally, Dr. Strong does not

provide any basis for these conclusions.  Therefore, the content

or meaning of any warranty representations made by CCP or

Plaintiffs are clearly beyond the scope of his expertise.

Accordingly, paragraphs 31 and 32 will be excluded.[16]

---

[15] *Cf. Berckeley Invest. Group, Ltd. v. Colkitt*, 455 F.3d
195, 218 (3d Cir. 2006) (expert testimony from former SEC
attorney regarding securities industry custom with respect to
exemption from registration requirements was admissible as
probative of buyer's scienter at the time of the agreement, but
not outcome determinative).

[16] The challenged portions of paragraph 33 also relate to
what manufacturers exclude from their warranties.  Dr. Strong
cites to warranties offered by two other manufacturers to support
his assertion.  However, the meaning of those warranties are not
at issue in this case, and as discussed above, the interpretation
of warranties is outside of Dr, Strong's expertise.  Accordingly,
the all but the first three sentences of paragraph 33 will also
be excluded.

**C.**

Paragraph 92 states: "Therefore, I conclude that CCP acted responsibly in the development and testing of the 953 Series gel coat product." (Strong Rep. ¶ 92.) Plaintiffs challenge this conclusion on the grounds that it is a legal conclusion relating to the CCP's duty of care. It is not disputed that "[t]he district court must limit expert testimony so as to not allow experts to opine on 'what the law required' or 'testify as to the governing law.'" *Holman Enters. v. Fidelity & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 472 (quoting *United States v. Leo*, 941 F.2d 181, 196-97 (3d Cir. 1991)). However, the Court is not required to exclude Dr. Strong's opinion merely because he used the word "responsibly." *See Crowley v. Chait*, 322 F. Supp. 2d 530, 500 (D.N.J. 2004) ("[T]he Court is not prepared to exclude [the expert]'s reports on *Daubert* grounds merely because he made occasional use of the word "negligent" or the phrase "should have known.").

One of the fundamental issues in this case, is what did, or did not cause the gel coat cracking in this case.[17] However, the jury in this case is simply not being asked whether to determine whether "CCP acted responsibly." Additionally, the word

---

[17] It is precisely for that reason that Dr. Strong's testimony relating to the "Chemical Theory" section and paragraph 91 is relevant.

"responsibly" can have a different meaning to different lay jurors, and there is a high likelihood that Dr. Strong using that word will cause confusion.

CCP argues that Dr. Strong is merely "summarizing his opinions that CCP's testing methodology was a reliable means of measuring gel coat elongation, that CCP developed the 953 Series gel coat's formulation through responsible application of chemical principles, and that 953 Series gel coat, just as CCP represented, possessed greater elongation than 952 Series gel coat." (Def. Br. At 33.) However, if that is true, paragraph 92 would merely be duplicative of the opinions in paragraph 91. Likewise, to the extent that paragraph 92 has a meaning other than the one proffered by CCP, it would be both confusing to the jury, and sounds dangerously close to being a legal conclusion. Therefore, any opinion on whether or not "CCP acted responsibly" (Strong Rep. ¶ 92), simply will not "assist the trier of fact to understand the evidence or to determine a fact at issue," and is therefore excluded. Fed R. Evid. 702.

## IV.

For the reasons set forth above, Plaintiffs' Motion to Exclude Portions of the Report and Testimony of Defendant's Chemical Expert A. Brent Strong, Ph.D. is granted in part and denied in part. Plaintiffs' Motion is denied with respect to

paragraphs 12, 17-30, 35-38, and 91.  Plaintiffs' Motion is
granted, and Dr. Strong's opinions are excluded with respect to
paragraphs 31, 32, 92, and the last three sentences of paragraph
33.


Dated:  May 14, 2009


                              s/ Joseph E. Irenas
                              **Joseph E. Irenas, S.U.S.D.J.**