UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIKING YACHT COMPANY, a New Jersey Corporation; and POST MARINE CO., INC., a New Jersey Corporation, | HONORABLE JOSEPH E. IRENAS |
| Plaintiffs, | CIV. NO. 05-538 (JEI/JS) |
| v. | |
| COMPOSITES ONE LLC, a Foreign Limited Liability Company; CURRAN COMPOSITES, INC., a Missouri Corporation; C TWO LLC, a Foreign Limited Liability Company; and TOTAL COMPOSITES, INC., a Delaware Corporation joint d/b/a/ COOK COMPOSITES AND POLYMERS, a fictitiously named Delaware Partnership, | **OPINION** |
| Defendants. | |

**APPEARANCES:**

HENRY J. TYLER, Esq.
P.O. Box 537
Mullica Hill, NJ 08062

BERGER SINGERMAN
By: Michael O. Weisz, Esq.
200 South Biscayne Boulevard
Suite 100
Miami, FL 33131
    Counsel for Plaintiffs

BUCHANAN INGERSOLL PC
By: Steven E. Bizar, Esq., Landon Y. Jones, Esq.
1835 Market Street, 14th Floor
Philadelphia, PA 19103

By: P. Kevin Bobson, Esq.
213 Market Street, 3rd Floor
Harrisburg, PA 17101
    Counsel of Defendant Cook Composites and Polymers

**IRENAS**, Senior District Judge:

Presently before the Court are Defendant's Renewed Motion for Summary Judgment on Counts VII, IX, X, and XI (Docket No. 169) and Plaintiffs' Renewed Cross-Motion for Summary Judgment (Docket No. 192).[1] The Court has reviewed the submissions of the parties, and for the reasons set forth below, Defendant's Motion will be granted in part and denied in part, and Plaintiffs' Cross-Motion will be denied.

**I.**

Viking Yacht Company ("Viking") and Post Marine Co., Inc. ("Post") (collectively, "Plaintiffs") are luxury yacht manufacturers. They brought suit against Defendant Cook Composites and Polymers, Co. ("CCP") to recover damages resulting from the cracking of gel coats on yachts Plaintiffs manufactured using CCP's 953 Series gel coat. The Court has extensively discussed the facts and history of this case in its previously issued opinions on cross-motions for summary judgment, motions for reconsideration, and a more recent motion to bifurcate the trial of liability and damages.[2] As a result of this Court's

---

[1] Plaintiffs cross-move for summary judgment on Counts IX, X, and XI only.

[2] *See Viking Yacht Co. v. Composites One, LLC*, 2008 WL 5244411, No. 05-538 (D.N.J. Dec. 16, 2008); *Viking Yacht Co. v. Composites One, LLC*, 2007 WL 2746713, No. 05-538 (D.N.J. Sept. 18, 2007); *Viking Yacht Co. v. Composites One, LLC*, 496 F. Supp.

2

previous holdings, Plaintiffs' surviving claims are: (1) breach of express warranty, (2) common law fraudulent misrepresentation, and (3) violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2.

In reaching it's holdings on the previous motions for summary judgment and subsequent motions for reconsideration, the Court performed a careful review of the record, and based its conclusions upon the evidence as it existed at the time. Following the resolution of the aforementioned motions, the parties conducted expert discovery, and subsequently filed motions *in limine* to exclude the experts' testimony; the Court has recently decided these motions as well.[3, 4] As a result of

---

2d 462 (D.N.J. 2007).

[3] *See Viking Yacht Co. v. Composites One, LLC*, --- F. Supp. 2d ----, 2009 WL 1393708, No. 05-538 (D.N.J. May 20, 2009) (excluding in part Plaintiffs' structural expert, Jones), *Viking Yacht Co. v. Composites One, LLC*, --- F. Supp. 2d ----, 2009 WL 1323826, No. 05-538 (D.N.J. May 14, 2009) (excluding in part CCP's chemical expert, Dr. Strong), *Viking Yacht Co. v. Composites One, LLC*, --- F. Supp. 2d ----, 2009 WL 1312867, No. 05-538 (D.N.J. May 12, 2009) (excluding in part Plaintiffs' chemical expert, Dr. Caruthers), *Viking Yacht Co. v. Composites One, LLC*, --- F. Supp. 2d ----, 2009 WL 1111207, No. 05-538 (D.N.J. Apr. 27, 2009) (excluding in part Plaintiffs' damages experts).

[4] CCP also filed a "Motion *in Limine* to Preclude Evidence of Consequential and Incidental Damages." However, upon review, the Court concluded that it was nothing more than an untimely attempt to file a motion to reconsider the Court's holding on the previous motions for reconsideration. The Court also rejected CCP's argument based on Federal Rule of Civil Procedure 54(b) because "the Court does not believe it has made an error." *Viking Yacht Co. v. Composites One, LLC*, No. 05-538, slip op. at

3

those opinions, the Court has a clearer picture of what evidence the parties will be able to present at trial, particularly that having to do with the alleged flaws in the formulation of the 953 Series gel coat. The introduction of the expert testimony into the record is the most significant change to the record since the previous summary judgment motions.[5]

Plaintiffs will be offing Dr. James M. Caruthers, Ph.D., a professor of chemical engineering, to offer testimony pertaining to the laboratory testing and chemical composition of the 953 Series gel coat. Particularly, he opines that ,"[n]one of the laboratory testing of the CCP resins addressed the critical use condition, which included long term UV exposure, long term exposure to air and subambient deformation of the gel coat." (Caruthers Rep. at 2.) Additionally, he opines that, "[t]he formulation of the 953 gel coat is flawed due to the presence of the adipic acid and the absence of the UV stabilizer, leading to degradation over time of the flexibility of the 953 gel coat." (Id.)

Plaintiffs will also be offering David E. Jones, III, "naval architect and marine engineer," with a specialty in "structural composites," to testify regarding the "unique" global nature of

---

3 (D.N.J. May 13, 2009).

[5] The number of yachts at issue in the case has also increased since the previous summary judgment motions were decided, but that has minimal bearing on the instant Motions.

the cracking in the Tortora yacht[6], and his elimination of certain manufacturing causes that he specifically looked for and eliminated.[7]

CCP will be offering Dr. A Brent Strong, who hold a Ph.D. in chemistry and is a professor of mechanical engineering technology. Dr. Strong repeated CCP's PE-210 test, and concluded with "a confidence level of 95%" that the 953 Series gel coat was more flexible than the 952 Series gel coat. (Strong Rep. ¶¶ 64-65.) Furthermore, his results "confirm that the data reported by CCP in 1998 stating that the 953 Series gel coat had improved elongation over the 952 Series gel coat. . . . [and] also established that the PE-210 test is reliable for determination of elongations." (Id. at ¶ 67.) With regard to the chemical formulation of the 953 Series gel coat, Dr. Strong concluded:

> The formulation of the 953 Series gel coat is appropriate. The performance of boats made by other boat manufacturers, such as Anthony Smith at Performance Cruising, shows that the 953 Series gel coat performs

---

[6] Jones examined and took samples from vessel # VKY55945H900, known over the course of this litigation as "the Tortora yacht."

[7] Jones has also been permitted to testify that if any Viking or Post yacht exhibits gel coat cracking similar to that found on the Tortora yacht, such cracking would not result from any of the specific manufacturing defects excluded in his analysis of the Tortora yacht. However, all of Jones's testimony regarding specific yachts was limited to the Tortora yacht and boats where Jones has reviewed either pictures or documentation supporting a conclusion that the cracking in those boats is substantially similar to the cracking in the Tortora yacht. *See Viking*, 2009 WL 1393708.

5

> well. This excellent performance suggest that the cracking difficulties encountered in boats made by Viking and Post are not in the gel coat, but, rather, in some other factor beyond or outside CCP's control (such as design, manufacturing, use, environment, etc.). The performance of the gel coat, especially in light of the many good cases of 953 Series gel coat usage, is chiefly a function of the design and manufacturing of the boat or the environment in which it is used. Therefore, the cause of the cracking problem lies with Post or Viking, or possibly, with the ultimate consumer who has not used the boat properly, or it could also be the result of environmental factors.

(Id. at ¶ 91.)

**II.**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir.1986).

"'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district

court-that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir.2004) (quoting *Celotex* ). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### III.

CCP has previously moved, and Plaintiffs cross-moved for summary judgment on the breach of warranty claims, Counts IX and X. After discussing the applicable law and the warranty language at some length, the Court "held that CCP's representations in the PB-58 created an express warranty that was not disclaimed." *Viking*, 496 F. Supp. 2d at 470. However, the Court could not

> decide as a matter of law whether this warranty was breached. The warranty for "improved flexibility" is vague. A reasonable jury could find that a warranty for improved flexibility does not include a warranty against cracking after use and/or storage in cold climates by the end purchaser of the yachts.

*Id.* Accordingly, summary judgement was denied as to both parties. While CCP maintains that it would be able to prove at trial that there was no warranty for future performance of the gel coat, CCP argues that even if the jury were to conclude that the warranty did include "cracking after use and/or storage in cold climates by the end purchaser of the yachts," Plaintiffs

7

have still failed to present sufficient evidence to prevail.

CCP argues that expert testimony is required to prove to the jury that 953 Series gel coat degrades over time and that this degradation caused the cracking at issue, but that Plaintiffs have failed to offer any admissible expert testimony on this issue. In fact, the entirety of CCP's argument in favor of summary judgment is based on the premise that Dr. Caruthers's testimony is inadmissible under Federal Rule of Evidence 702.[8] However, the Court has held that the majority of Dr. Caruthers's testimony is admissible, particularly the testimony dealing with the formulation of the 953 Series gel coat, and the effects that the addition of adipic acid and the removal of a UV stabilizer would have on the long-term flexibility of the gel coat.[9] *See Viking*, 2009 WL 1312867, at *7. In light of this testimony, a reasonable jury could certainly conclude that the cracking was caused by a breach of CCP's warranty.

By the same token, Plaintiffs argue that they are entitled to summary judgment because "[t]here is no evidence that the

---

[8] Particularly relevant is Dr. Caruthers's conclusion that "[t]he formulation of the 953 gel coat is flawed due to the presence of the adipic acid and the absence of a UV stabilizer, leading to degradation over time of the flexibility of the 953 gel coat." (Caruthers Rep. at 2.)

[9] CCP makes several other less persuasive arguments, all premised on the proposition that Dr. Caruthers's testimony is not admissible. However, the Court will not address them as Dr. Caruthers's testimony on this issue is admissible.

cracking was caused by anything other than the change in formula."[10] (Pl. Br. at 40.) They criticize the conclusions that Dr. Strong reached because he did not conduct any testing to determine the actual cause of the cracking. However, as with Dr. Caruthers's testimony, the Court has already determined the admissibility of Dr. Strong's testimony in a separate opinion. *See Viking*, 2009 WL 1323826. Dr. Strong is being permitted to testify that he believes that "adipic acid is a logical choice of constituent monomer to increase the elongation of a polymer." (Strong Rep. at ¶ 89.) Additionally, Dr. Strong is being permitted to opine that "the cracking difficulties encountered in boats made by Viking and Post are not in the gel coat but, rather, in some factor beyond CCP's control." (Strong Rep. ¶ 91.) *See Viking*, 2009 WL 1323826, at *3-6 (permitting Dr. Strong to testify that the cause of the cracking was not a failure of the 953 Series gel coat). As such, CCP has offered sufficient

---

[10] Plaintiffs also argue that "[n]o reasonable jury could find CCP's warranty of "improved flexibility" vague or that it does not apply to boats stored in cold weather." (Pl. Br. at 25.) However, the Court has specifically held the exact opposite to be true in its previous opinion. *Viking*, 496 F. Supp. 2d at 470. To the extent Plaintiffs seek reconsideration of the Court's previous holding regarding the meaning of the warranty, their Motion would be untimely as it was filed well outside the 10-day window to seek reconsideration. *Viking Yacht Co. v. Composites One, LLC*, No. 05-538, slip op. at 3 (D.N.J. May 13, 2009). Additionally, the new evidence in the record, namely the expert testimony, has no bearing on the meaning of the warranty itself. *See Viking*, 2009 WL 1323826, at *6 (excluding Dr. Strong's testimony on the meaning of the warranty because it is outside his area of expertise).

9

evidence to refute the causal connection between the alleged breach of warranty and the damaged incurred by Plaintiffs for the purposes of surviving summary judgment.

Having competing admissible expert testimony on a particular issue is the epitome of a disputed issue of fact. The Court has previously noted that "[t]he disagreement on this issue between Drs. Caruthers and Strong is precisely within 'the range where experts might reasonably differ, and where the jury must decide among the conflicting views of different experts . . . .'" *Viking*, 2009 WL 1323826 at n.13 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999)). As such both CCP's Motion and Plaintiffs' Cross-Motion will be denied as to Counts IX and X.

**IV.**

The Court set forth Plaintiffs' burden to survive summary judgment for Count VII in its first summary judgment opinion:

> To defeat a summary judgment motion, a plaintiff alleging fraud "carries the burden of presenting evidence which could permit a reasonable jury to find by clear and convincing evidence the existence of fraud." *Atlantic City Racing Assoc. v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 504 (D.N.J. 2000). However, "where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) (quoting *Berman v. Gurwicz*, 189 N.J. Super. 89, 458 A.2d 1311 (Ch. Div. 1981)).

*Viking*, 496 F. Supp. 2d at 471. Plaintiffs' theory was that "CCP changed its opinion about the flexibility of the gel coat . . . based upon the fact that CCP published test results in January, 2002, that demonstrate a different range in flexibility than did its previously published results."[11]  *Id.* at 472.

The Court granted summary judgment on Count VII in favor of CCP for actions or omissions prior to 2002 because "the record is unambiguous that prior to 2002, CCP's tests indicated that the 953 Series was more flexible than the 952 Series." *Id.* The Court also concluded that "CCP had a duty to disclose the 2002 test results, but only if those results indicate that the 953 Series is less flexible than CCP initially represented." *Id.* However, the Court could not determine, as a matter of law, "[w]hether the data reflects that the 953 Series is less flexible." *Id.*

When the Court framed the remaining issue in this way, there were no expert reports in the record, and as such, the Court did not have a complete context in which to interpret the results of either the 1998 or 2002 tests. However, after having reviewed

---

[11] As the Court has previously explained: "CCP published information that the 952 Series' elongation, which represents flexibility, is between 1.1% and 1.5%. When it tested the 953 Series, it found that its elongation was between 1.3% and 1.7%. In January of 2002, CCP published new elongation information indicating that range of the 953 Series is between 1.2% and 1.4%." *Viking*, 496 F. Supp. 2d at 472. However, the 2002 results do not indicate a value for the 952 Series gel coat because it had already been discontinued. Furthermore, while the earlier testing was conducted at 77-78°F, the 2002 testing was conducted at "room temperature (~70°F)." (2002 MB-295.)

11

the reports of Dr. Strong and Dr. Caruthers, as well as determining the scope of their admissible testimony,[12] the Court is in a much better position to determine what "the data reflects." *Id.* Additionally, in the nearly two years since the Court's first summary judgment opinion, Plaintiffs have clarified their theory of the case. Plaintiffs argument is not that the information that CCP provided was in any way incorrect or false, but rather that it was "worthless" because it only tested the performance of the gel coat at the time it was manufactured. (Pl. Br. at 47.)

CCP's expert, Dr. Strong, replicated the PE-210 test and concluded with "a confidence level of 95%" that the 953 Series gel coat was more flexible than the 952 Series gel coat. (Strong Rep. ¶¶ 64-65.) Furthermore, his results "confirm that the data reported by CCP in 1998 stating that the 953 Series gel coat had improved elongation over the 952 Series gel coat. . . . [and] also established that the PE-210 test is reliable for determination of elongations." (Id. at ¶ 67.) Likewise, when Plaintiffs' expert, Dr. Caruthers, was asked in his deposition, whether he "believe[s] that the numbers recorded in any of the test results that have been produced or published in this case in product literature by CCP or otherwise are false or inaccurate,"

---

[12] *See Viking*, 2009 WL 1323826,(excluding in part CCP's chemical expert, Dr. Strong)*, Viking*, 2009 WL 1312867(excluding in part Plaintiffs' chemical expert, Dr. Caruthers).

12

he responded that he did not. (Caruthers Dep. 221:22-222:19.) Rather, Dr. Caruthers's challenge to the PE-210 is that it does not "address[] the affects of long term UV degradation and/or thermo-oxidative stability of the mechanical behavior of the 953 resin." (Caruthers Rep. at 3.) While this argument is in line with Plaintiffs theory, it has no bearing on whether or not the disclosure of the 2002 test was "necessary to make a previous statement true." *Lightning Lube,* 4 F.3d at 1185. Dr. Caruthers does not in any way say that CCP should have known from the 2002 tests that the previous tests were invalid, or that there was reason to believe, based on the testing, that the 953 Series would degrade more rapidly than the 952 Series.[13]

Simply stated, there is no disputed issue of fact that the results of the PE-210 testing show that the 953 Series gel coat had greater elongation than the 952 Series gel coat at the time it was tested. Plaintiffs complaint now seems to be that the PE-210 tested only the static condition of the gel coat at the time, and not the long term impact of temperature and UV exposure. However, as the court noted in its previous opinion, an essential element of fraudulent misrepresentation is "knowledge or belief

---

[13] Dr. Caruthers does conclude that CCP should have known, based on chemical theory, that the 953 Series would degrade more rapidly due to the addition of adipic acid and the removal of a UV stabilizer. (Caruthers Rep. at 3.) However, that conclusion is not relevant to this analysis because the fraud claim is limited to what CCP knew as a result of the 2002 tests.

13

by the defendant of [the fact's] falsity." *Viking*, 496 F. Supp. 2d at 471 (internal citations omitted). Considering both that Plaintiffs' argument is with the significance of the data, and not the data itself, and that the admissible expert testimony attests to the reliability of the data, there is simply no evidence "which could permit a reasonable jury to find by clear and convincing evidence the existence of fraud."[14] *Atlantic City Racing Assoc.* 90 F. Supp. 2d at 504. Accordingly, CCP's Motion will be granted with regard to Count VII.

**V.**

The parties have also both moved for summary judgment on the remaining NJCFA claim contained in Count XI. The Court has previously denied summary judgment in favor of CCP because "[t]he state of the record [was] unclear for purposes of summary judgment at this time. The Court [was] unable to determine the veracity of CCP's initial representations or the significance of the 2002 testing." *Viking*, 496 F. Supp. 2d at 475. Since that time, Plaintiffs have clarified their position to be that "CCP violated the NJCFA by affirmatively distributing misleading test results implying the warranty of 'improved flexibility' had

---

[14] The Court is not necessarily endorsing any expert's conclusions. Rather, it is concluding, as a matter or law, that Plaintiff failed to offer any evidence that the test results were such that CCP had a duty to reveal them.

scientific support.  Alternatively, CCP's failing to disclose that the test was not predictive and that the results should not be relied on for any purpose is a knowing omission that also violated the NJCFA."  (Pl. Br. at 46.)  Both of these arguments fail.

Plaintiffs argue that CCP affirmatively misrepresented the utility of the PE-210 testing.  However, the only affirmative representation made to Plaintiffs was that the 953 Series gel coat had greater elongation than the 952 Series at the time it was tested.  (*See* Healey Dep. at 59-72.)  CCP also clearly disclosed the basis for its representation.[15]  As already discussed, both Drs. Caruthers and Strong agree that the PE-210 is a reliable means of measuring gel coat elongation at the time it is tested.  (*See* Caruthers Dep. 221:22-222:19; Strong Rep. ¶¶ 64-65, 67.)  Accordingly, Plaintiffs claim based on a theory of affirmative misrepresentation fails because the representation based on the PE-210 test were never actually false.[16]

---

[15] The MB-295 bulletin from both 1998 and 1999 clearly state that "Elongation determined by PE-210, Mandrel Bend Test. . . . Tests were run at 77°F on samples that had been post cured." Similarly, the MB-295 from 2002 states that "Elongation determined by PE-210, Mandrel Bend Test. . . . Tests were run at room temperature (~70°F) on samples that had been post cured for 16 hours at 150°F."

[16] The Court has already ruled on Plaintiffs' arguments to the extent that they claim that the mere fact that the gel coat, as applied, has not demonstrated "improved flexibility," implies that CCP's representations were false.  The Court does not accept the premise that a breach of warranty regarding the

15

Plaintiffs' claim on a theory of omission, whereby CCP did not tell Plaintiffs that the 953 Series gel coat might degrade over time, also fails. In order to prevail on NJCFA claim based on an omission, Plaintiffs must show that CCP acted "knowingly." *Ji v. Palmer*, 333 N.J. Super. 451, 461 (App. Div. 2000). The Plaintiffs have defined what they see to be the ultimate issue in this case via Dr. Caruthers's report: the problem with the 953 Series gel coat stems from the addition of adipic acid and the removal of the UV stabilizer, which makes the 953 Series gel coat more susceptible to degradation over time when exposed to extreme temperatures and sunlight. (Caruthers Rep. at 2.) Even if the jury were to accept Plaintiffs' theory regarding the degradation, and credit Dr. Caruthers's testimony over Dr. Strong's, there is no evidence in the record that might indicate that CCP knew that the 953 Series would degrade.[17] As Plaintiffs repeatedly point out, the only test CCP conducted was the PE-210, and it has

---

characteristics of a product necessarily gives rise to a claim for an affirmative misrepresentation under the NJCFA. In fact, the Court specifically held as much in it's first summary judgment opinion when it granted summary judgment in favor of CCP on Count XII, and the reconsideration opinion upholding that decision. *See Viking*, 496 F. Supp. 2d at 475 ("Under New Jersey law, a mere breach of warranty does not constitute a violation of the NJCFA.") (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994)), *Viking*, 2007 WL 2746713, at *3-4.

[17] The Court is not making a finding that the addition of adipic acid and the removal of the UV stabilizer was the cause of the cracking, or in any way finding Dr. Caruthers's report more credible than Dr. Strong's.

already been established that the PE-210 cannot indicate performance over time, and could have provided CCP with no knowledge to be omitted.[18] There is simply no evidence in the record that would permit the jury to conclude that CCP acted "knowingly" in any omission it may have made. Accordingly, CCP's Motion for Summary Judgment will be granted, and Plaintiff's Cross-Motion will be denied, with regard to Count XI.

## VI.

For the aforementioned reasons, both CCP's Motion for Summary Judgment and Plaintiffs Cross-Motion for Summary Judgment

---

[18] The record in this case does not suggest that CCP was willfully blind to the existence of a readily available test which would reliably measure the degradation of a gel coat's flexibility over a substantial period of time. While, Dr. Caruthers did testify at his deposition that it is possible to conduct such a test, (Caruthers Dep. 218:13-20, 223:6-224:10.), he failed to identify such a test, or to specify its parameters, cost or availability. He pointed to no literature describing such a test or supporting its practical availability. Furthermore, Dr. Caruthers himself did not perform any flexibility testing on the 953 Series gel coat, whether the PE-210 or any other gel coat test which might measure its flexibility either in the short or long term. (Id. at 222:20-223:14.) Moreover, the record is devoid of any evidence that CCP was aware of any bench test which could measure the possible degradation of gel coat over time when exposed to a variety of environmental conditions.

The MB-295 product bulletins issued by CCP in 1998 and 1999 also disclaim that "[f]inal determination of the suitability of the material for the use contemplated [and] that manner of use . . . is the sole responsibility of the buyer." Somewhat ironically, if there really was a known, practical test for measuring long-term degradation of gel coat when subjected to a variety of environmental conditions, CCP's disclaimer might have some relevance to this case.

17

will be denied with regard to Counts IX and X.  CCP's Motion will be granted with regard to Counts VII and XI, and accordingly, Plaintiffs Cross-Motion with regard to Count XI will be denied.


Dated: June 2, 2009


                                               s/ Joseph E. Irenas  
                                               **Joseph E. Irenas, S.U.S.D.J.**